## WALNUT *v.* WADE.

1 A bill designated as " House Bill No. 231," and having for its title, " An Act to amend an act entitled 'An Act to incorporate the Illinois Grand Trunk Railway,'" regularly passed the House of Representatives of the General Assembly of Illinois. In its passage through the Senate "Illinois" was dropped from the title, and in the message of the House to the Senate and of the Senate to the House, reporting its passage by those bodies respectively, "Illinois" was left out of the title, but the designation as House Bill, No. 231 was retained. The journals show no amendment to the title. The bill as above entitled was signed by the presiding officer of each House. The Constitution of Illinois then in force provides that "every bill shall be read on three different days in each House, . . . and every bill having passed both Houses shall be signed by the speakers of their respective Houses." *Held*, that the act was duly and constitutionally passed.

2. The word "inhabitants," where it occurs in the first section of the act, means legal voters.

3. After the voters of a town have, at an election held pursuant to that act, voted in favor of a donation to aid in the construction of a railroad, the supervisor and clerk are the proper authorities to subscribe for the stock of the railroad company and issue the bonds of the township therefor.

4. A *bona fide* holder of the bonds is not bound to look beyond their recitals and the legislative enactment under which they were issued.

5. The fact that the coupons are made payable at a particular place does not make it necessary to aver or prove a presentation of them for payment there.

6. Coupons bear interest from their maturity, and, when severed from the bonds, are negotiable, and pass by delivery.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. William C. Goudy* and *Mr. Allan C. Story* for plaintiff in error.

*Mr. Thomas S. McClelland* and *Mr. George A. Sanders* for the defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court.

This suit was brought upon one thousand and ten coupons for ten dollars each, representing the annual interest on three hundred and twenty-one bonds for the sum of one hundred dollars each, purporting to be executed by the township of Walnut. It was claimed that the bonds were issued in aid of the

Illinois Grand Trunk Railway Company, and in payment of stock in that company subscribed for by the plaintiff in error and delivered to it.

The coupons bore the following numbers: From 1 to 200 inclusive, 258, and from 281 to 400 inclusive, and were cut from bonds bearing corresponding numbers.

Before final judgment in the court below the defendant in error took a nonsuit as to all coupons sued on bearing numbers from 301 to 400 inclusive, and withdrew the same from consideration by the court, and left, as the cause of action, only those coupons which bore numbers under 301.

The declaration set out a copy of one of the coupons sued on and averred that all the others were of the same tenor and effect except as to their numbers and date of payment respectively. The copy was as follows : —

"No. 251.   Series 4, due January 1, 1875, for $10.

"$10.]            WALNUT TOWNSHIP.            [No. 251.

"*Railroad Bond.*

"Interest Warrant.

"Supervisor of Walnut Township pay to bearer, January 1, 1875, ten dollars, at the office of the State treasurer, Springfield, Illinois.

"WM. SANDERS, *Town Clerk.*
"M. KNIGHT, *Supervisor.*"

The parties waived a trial by jury and submitted the cause to the court upon the issues of fact as well as of law. The court made a special finding of facts, as follows : —

"*First,* That said defendant town, by its town clerk and supervisor, did, some time in the month of October, A. D. 1870, make its four hundred bonds for the sum of one hundred dollars each, and numbered consecutively from one to four hundred, inclusive, amounting in the aggregate to the sum of forty thousand dollars, said bonds bearing interest at the rate of ten per cent per annum, payable annually, and the principal thereof payable to the Illinois Grand Trunk Railway or bearer on the first day of January, A. D. 1881, and dated January 1, 1871, said interest being evidenced by ten interest-warrants or cou-

pons for ten dollars each, payable to bearer and attached to said bonds, as set out in the declaration in this case. That said bonds recited on their face that they were issued to said Illinois Grand Trunk Railway by authority of an act of the legislature of the State of Illinois, approved March 25, 1869, entitled 'An Act to amend an act entitled "An Act to incorporate the Illinois Grand Trunk Railway,"' and 'in pursuance of a vote of the people of said town, had and taken June 25, 1870,' being the same bonds described in plaintiff's declaration. That the coupons described in said declaration were cut from the first three hundred of said bonds, and are all due and unpaid.

"*Second*, That at some time in the month of January, A. D. 1871, the supervisor and town clerk of said town, acting for and in behalf of said town, subscribed for forty thousand dollars of the capital stock of said Illinois Grand Trunk Railway, and issued and delivered said four hundred bonds to said railway in payment of said subscription, and that within ten or fifteen days therefrom the said railway corporation sold said bonds for value, and applied the proceeds to the construction of its railroad through said town; and that said plaintiff, on the       day of September, A. D. 1871, bought the bonds from which the coupons sued on were detached, and also all the coupons thereto attached and unpaid, in good faith, in the New York market, and paid therefor in money at the rate of ninety-two and one-half cents on the dollar, without actual notice of any defence whatever against said bonds or coupons.

"*Third*, That the said act of the legislature of the State of Illinois, approved March 25, 1869, entitled 'An Act to amend an act to incorporate the Illinois Grand Trunk Railway,' was duly and constitutionally passed by the General Assembly of said State of Illinois.

"*Fourth*, That the voters of said town, at an election duly called and held in said town, pursuant to the provisions of said act, on the twenty-fifth day of June, 1870, voted that said town would subscribe for thirty thousand dollars of the capital stock of said railway, and in payment therefor issue the bonds of said town for the amount of said stock, bearing ten per cent interest annually, and the principal sum payable in ten years from their date.

" That on the sixth day of August, 1870, at another election called and held in pursuance of the requirements of said act, the electors of said town voted to subscribe for ten thousand dollars of the capital stock of said railway, in addition to the thirty thousand dollars voted on the twenty-fifth day of June, 1870, to be paid for in bonds of said town, bearing the same rate of interest and payable at the same time as the bonds to be issued for said thirty thousand dollars subscription.

" *Fifth,* That the coupons offered in evidence and upon which judgment is rendered in this case were cut from bonds of said issue numbered from one to three hundred."

'Besides this special finding the record contained a bill of exceptions which embodied all the evidence submitted by both parties in the case.

Upon the special finding the court rendered judgment for the plaintiff below for the principal sum due on the coupons, and for interest thereon from the date when they were payable respectively.

The alleged act of the legislature, by authority of which it was claimed the bonds were issued, is as follows : —

" An Act to amend an act entitled ' An Act to incorporate the Illinois Grand Trunk Railway.'

" SECTION 1. Be it enacted by the people of the State of Illinois, represented in the General Assembly, that any city, incorporated town, or township which may be situated on or near the route of the Illinois Grand Trunk railway, west of the city of Mendota, *via* Prophetstown, to the Mississippi River, may become subscribers to the stock of said railway, and may issue bonds for the amount of such stock so subscribed, with coupons for interest thereto attached, under such limitations and restrictions and on such conditions as they may choose, and the directors of said company may approve the proposition for said subscription, having been first submitted to *the inhabitants* of such city, town, or township, and *approved by them ;* and upon application of any ten voters of any city, town, or township, as aforesaid, specifying the amount to be subscribed, and the conditions of such subscription, it shall be the duty of the clerk of such city, town, or township immediately to call an election, in the same manner that other elections for said city, town, or township are called, for the purpose of determining whether said city, town, or township will subscribe to the stock of said railway ; and if a majority

of said votes shall be 'for subscription,' then the corporate author-ities of said city, town, or township, and the supervisor and town clerk of said township so voting, shall cause said subscription to be made; and upon its acceptance by the directors of said company shall cause bonds to be issued in conformity with said vote, which bonds shall not be of less denomination than one hundred dollars, and in no case bear a higher rate of interest than ten per cent, pro-vided no such election shall be held until at least thirty days' previous notice thereof shall be given in the manner prescribed by law.

"SECT. 2. It shall be the duty of the proper authorities of any city, town, or township, issuing bonds as aforesaid, to make all necessary arrangements, and provide for the prompt payment of all interest and other liabilities accruing thereon, and to levy such taxes as may be necessary therefor as other taxes are levied by them.

"SECT. 3. This act shall be liberally construed for the purposes intended and expressed therein, and shall be held to be a public act, and shall be in force from and after its passage." Approved March 25, 1869.

This act was passed while the Constitution of Illinois of 1848 was in force.

That Constitution contained the following provision (sect. 23 of art. 3) : —

" Every bill shall be read on three different days in each House . . . and every bill having passed both Houses shall be signed by the speakers of their respective Houses; and no private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title."

On July 2, 1870, a vote was taken by the voters of the State of Illinois, which resulted in the adoption of a new constitution and of certain separate articles, one of which reads as follows, and it took effect that day : —

"No county, city, town, township, or other municipality shall ever become subscriber to the capital stock of any railway or pri-vate corporation, or make donation to or loan its credit in aid of such corporation : *Provided, however,* that the adoption of this article shall not be construed as affecting the right of such munici-

pality to make such subscriptions where the same have been authorized under existing laws by a vote of the people of such municipalities prior to such adoption."

The first assignment of error relates to the finding of the court, that the act by authority of which the bonds in question were issued "was duly and constitutionally passed." The plaintiff in error disputes this finding.

A question arises here whether this finding is open to challenge.

One thing is clear, that there can be no review in this court of the finding of fact made in the court below.

Sect. 649 of the Revised Statutes declares : " The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." .

The office of a bill of exceptions, where the facts are tried by the court, is pointed out by sect. 700, Revised Statutes : " The rulings of the court in the progress of the trial of the cause, if excepted to at the time and duly presented by a bill of exceptions, may be reviewed by the Supreme Court upon a writ of error or upon appeal, and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

In *Norris* v. *Jackson* (9 Wall. 125), this court said : " A special finding is not a mere report of the evidence, but a statement of the ultimate facts on which the law of the case must determine the rights of the parties ; a finding of the propositions of fact which the evidence establishes, and not the evidence on which those ultimate facts are supposed to rest. . . . Whether the finding be general or special, it shall have the same effect as the verdict of a jury ; that is to say, it is conclusive as to the facts so found. . . . In the case of a special verdict [finding] the question is presented as it would be if tried by a jury, whether the facts thus found require a judgment for plaintiff or defendant. . . . The bill of exceptions, while professing to detail all the evidence, is no special finding of the facts."

It is thus seen that the only use which can be made of the bill of exceptions, when there is a special finding of facts, is to present the rulings of the court in the progress of the trial

upon questions of law.   The facts are conclusively settled by the finding of the court.

But the finding under consideration is not a finding of fact but of law.   The question whether an alleged statute " is really a law or not, is a judicial one, and is to be settled and determined by the court and judges, and is not a question of fact to be determined by a jury."   *Town of South Ottawa* v. *Perkins,* 94 U. S. 260 ;  *Gardner* v. *The Collector,* 6 Wall. 499.

So, notwithstanding the finding of the court below, the question whether the act of March 25, 1869, was duly and constitutionally passed, is, as one of law, open for examination here, — the decision of the court on it having been excepted to at the proper time.   And in deciding it, not only the facts presented by the bill of exceptions, but any other accessible competent evidence may be considered.

The plaintiff in error insists that the evidence set out in the bill of exceptions does not sustain the finding under consideration;  in other words, that there is error in law in the holding of the court, that upon the facts disclosed the statute in question was duly and constitutionally passed.

It is settled by the decisions of the Supreme Court of Illinois that the journals of the legislature may be resorted to for the purpose of overthrowing the *prima facie* evidence of the constitutional enactment of a law furnished by the signatures of the presiding officers of the two Houses.   *Town of South Ottawa* v. *Perkins, supra,* where those decisions on this subject are collected.

Both parties upon the trial in the court below introduced the journals of the two Houses of the Illinois legislature, — one to prove and the other to disprove the constitutional passage of the law.   From this evidence it appears that the bill in question when introduced into the House was designated and distinguished as House Bill No. 231, and with the title " An Act to amend an act entitled ' An Act to incorporate the Illinois Grand Trunk Railway.'"   It regularly passed the House with this title, having been read three times on three different days and having been referred to and reported by a committee.

In the Senate, according to the journals, the proceedings were as follows: On February 8, a message was received from the House to the effect that it had passed House Bill No. 231, entitled an act to amend an act entitled "An Act to incorporate the Grand Trunk Railway." On February 9, the bill with the same number and title was read the first and second time and referred to a standing committee. On March 4, House Bill No. 231, for "An Act to amend an act entitled an act to incorporate the Illinois Grand Trunk Railway," was reported back with amendments by the committee, to which House Bill No. 231 had been referred, which recommended that as amended it be read a third time and passed. The next day House Bill No. 231, and with the same title, except that the word "Illinois" was omitted therefrom, was read a third time and passed.

The Senate amendments to House Bill No. 231, with the same title as that under which it passed the House, were agreed to by the House. In the messages between the two Houses, in which the passage of the bill by each is reported to the other, the word "Illinois" is omitted from the title, but its designation as House Bill No. 231 is preserved. The bill, after its final passage, was enrolled as House Bill No. 231, with the title, "An Act to amend an act to incorporate the Illinois Grand Trunk Railway," and it was signed by that title by the presiding officers of both Houses and approved and signed by the governor.

We are now called on to decide whether upon this evidence the court below was justified in holding that the act was duly and constitutionally passed.

The evidence discloses the fact that in its passage through the Senate, according to the journal of that body, the word "Illinois" was twice dropped from the title of the bill, and that in the message of the House to the Senate and of the Senate to the House reporting the passage of the bill by those bodies respectively, the word "Illinois" is left out of the title of the bill.

The contention of the plaintiff in error is that the omission of the word "Illinois" from the title of the bill in several of its stages in the Senate, and especially in its final passage,

defeats it as a law and renders the enactment null and void. The ground of this claim is that, according to the journals of the two Houses, " one bill by one title passed the House and another bill by another title passed the Senate."

The evidence of the journals of the two Houses satisfies us that beyond question there was but one bill, and that was House Bill No. 231, " to amend an act entitled an act to incorporate the Illinois Grand Trunk Railway ; " that this bill regularly passed through all stages by both Houses without any change in its title, was signed by their presiding officers respectively, and was approved and signed by the governor.

The journals show no amendment to the title of the bill in either House. It is, therefore, perfectly clear that the omission of the word " Illinois " from the title in some of the stages of its passage through the Senate was a mere clerical error in keeping the journals. The designation of the bill as House Bill No. 231 was preserved in all the stages of its passage through both Houses, and until it was finally signed by the presiding officers of the two Houses and approved by the governor. The statute-book of the State of Illinois shows that only one act was ever passed to incorporate any " Grand Trunk Rail way " and that was the act to incorporate the Illinois Grand Trunk Railway. Therefore the act in question must have been an amendment to that act of incorporation, and could be an amendment to no other.

The fact of the identity of the bill passed by the two Houses is so clear that it seems to us no court could have any doubt on the subject.

In the case of *Larrison* v. *Peoria, Atlanta, & Decatur Railroad Co.* (77 Ill. 11), it appeared that by some clerical error the bill was introduced into the Senate as " Senate Bill No. 453, for an act to incorporate the Peoria, Atlanta, & *Danville* Railroad Company," thus changing the name of Decatur, in the title, to Danville ; but as the bill preserved its identity by holding its number, " 453," the Supreme Court of Illinois decided that the act was constitutionally passed. It said : —

" And the question is, was the bill for the act read three times in the Senate before its passage by that body ? If the entries on the journal refer to the same bill, then the require-

ments of the organic law are satisfied. The question is one of identity. Do these entries show there was one or two bills acted upon by the Senate? The number is the same throughout. About that there is not the pretence of the slightest doubt, and it is manifest that to have more than one bill pending at the same time, with the same number, would lead to confusion; it would defeat the very object of numbering bills, which is to preserve their identity and prevent confusion."

Another objection, based on the fact that the journals do not preserve the exact title of the bill in all the stages of its passage through the Senate, is that the title did not at all times conform to the constitutional requirement that the subject of the bill should be expressed therein.

There is no rule of parliamentary law, and there is no provision of the Constitution of Illinois, which requires a bill to preserve the same title through all its stages in both Houses. *Larrison* v. *Peoria, Atlanta, & Decatur Railroad Co., supra; Binz* v. *Weber,* 81 Ill. 288; *Plummer* v. *People,* 74 id. 361. But, as already said, it is sufficiently clear from the journals of the two Houses that no change whatever was made in the title of the bill in either House, and that the omission of the word "Illinois" from the title, as given in the journals of the Senate, was a mere clerical error, which could deceive or mislead no one. We are of opinion that these objections to the act are slender grounds for declaring to be null and void a law which appears on the statute-book of a State, and is found among its archives.

It is next insisted that the title of the act, as it appears upon the statute-book of the State, does not express its subject.

The Supreme Court of Illinois has substantially decided this point against the plaintiff in error in the case of *Belleville Railroad Co.* v. *Gregory,* 15 Ill. 20. See also *Unity* v. *Burrage, supra,* p. 447, where other cases decided by the Supreme Court of Illinois, on this question, are cited. *San Antonio* v. *Mehaffy,* 96 U. S. 312.

We are clear, therefore, that the Circuit Court was right in holding that the act, by authority of which the bonds in question were issued, was duly and constitutionally passed.

It is next contended by the plaintiff in error, that, under the

act referred to, the corporate authorities of the township alone could make the subscription to the stock of the railroad company and issue the bonds of the township. This claim is based on sect. 5, art. 9, of the Constitution of Illinois of 1848, which prohibits the legislature from authorizing any person to impose a burden of debt on the township, except the corporate authorities.

The stock was subscribed and the bonds were issued in this case by the supervisor and clerk, and it is insisted that neither the act of the legislature nor the Constitution of the State allowed this to be done; that it could only be done by the corporate authorities, which included the legal voters as well as the supervisor and clerk.

In construing a similar statute, passed under the Constitution of 1848, the Supreme Court of Illinois has decided that, after a vote by the electors of a township in favor of a donation to aid in the construction of a railroad, the supervisor and clerk of the township were the proper corporate authorities to subscribe for the stock of the company, and issue the bonds of the township therefor. *Town of Windsor* v. *Hallett*, 97 Ill. 204; *Town of Douglass* v. *Niantic Savings Bank* (not yet reported).

These cases are conclusive of this question, if, indeed, it needed any authority to settle it.

The next point made by the plaintiff in error is that the act of March 25, 1869, by authority of which the bonds were issued, did not authorize an election to be held on the question of subscribing stock in the railway company, at which only legal voters should vote; that the word "inhabitants," whose approval the act requires, cannot be construed to mean "voters" or "electors."

No copy of the bonds appears in the pleadings in this case. The special finding of the court, to which alone we are authorized to look to ascertain the facts upon which the judgment of the court rests, declares that the bonds recite on their face that they are issued "in pursuance of a vote of the *people* of said town, held and taken June 25, 1870."

The popular signification of the words "people of a town" and "inhabitants of a town" is the same; so that, according to the finding of the court, the bonds recited on their face a

substantial compliance with the requirement of the statute that the proposition for the subscription to the stock of the railroad company should be submitted to the " inhabitants of the town and affirmed by them." The plaintiff being, as appears from the findings of the court, a *bona fide* holder of the bonds without notice, is not bound to go behind this recital.

But it is not necessary, in order to maintain the validity of the bonds, to rely on this finding.

The findings of the court show that the " voters " of said town, on June 25, 1870, voted in favor of the proposition to subscribe $30,000 to the stock of the said railroad company.

We think that, by a fair construction of the act, this was all that was necessary. The act, it is true, requires the approval of the " inhabitants " of the town. In its broadest sense this would include all sexes, ages, and conditions. To require the approval by a vote of the " inhabitants " in this sense would be an absurdity. The act itself is its own interpreter, and shows that this is not its meaning. It provides that, upon the application of ten voters, it shall be the duty of the clerk " to call an election, in the same manner that other elections for said city, town, or township are called, for the purpose of determining whether said city, town, or township will subscribe to the stock of said railway."

The calls for " other elections for said city, town, or township " are addressed to the legal voters, and legal voters only are allowed to vote. The act, though carelessly drawn, clearly meant to restrict the election to the voters, and the approval of the " inhabitants " was to be indicated by the vote of a majority of the legal voters. This approval the finding of the court shows was obtained.

The intimation that the law required two elections for precisely the same purpose, one at which the inhabitants, and the other at which the electors, of the town should vote, imputes to the General Assembly an absurdity in legislation which the language of the act utterly fails to justify.

We think, therefore, that this assignment of error is without substantial ground to rest on.

It appears from the finding of the court that an election was held on June 25, 1870, on the proposition to subscribe

$30,000 to said railroad company. The plaintiff in error claims that this proposition was never approved by the directors of the company, and, therefore, that the bonds issued to carry this proposition into effect were issued without authority, and are, therefore, invalid.

There are two answers to this claim : 1. The act of March 25, 1869, does not require the approval of the directors of the company to the proposition as a condition precedent to the subscription of stock and the issue of bonds. 2. The court finds that the bonds contained recitals averring that they were issued by authority of the act of March 25, 1869, and in pursuance of a vote of the people of said town, which is in effect an averment that the conditions prescribed by said act to be performed before said bonds could be issued had been in fact performed. Whether the conditions precedent had been complied with was a question which was in effect left by the law to the " corporate authorities " who issued the bonds, to decide. The plaintiff, therefore, being a *bona fide* holder, was not bound to look beyond the legislative act and the recitals in the bonds. *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Marcy* v. *Township of Oswego*, id. 637.

The bill of exceptions shows that the plaintiff in error objected to the admission in evidence of the coupons sued on, because, 1, they were not presented to the proper officers or demand of payment made thereon and notice given to the drawers before suit ; 2, because they were detached from and not annexed to any bond, and the absence of the bond was not accounted for, and the same were not negotiable paper sufficient to base an action upon ; and, 3, because said coupons never were indorsed and are not negotiable by delivery.

None of these grounds of objection are tenable. The form of the coupons does not change their nature. They are evidences of the sums due for interest on the bonds. The fact that they are made payable at a particular place does not make a presentation for payment at that place necessary before a suit can be maintained on them. *Wallace* v. *McConnell*, 13 Pet. 136 ; *Irvine* v. *Withers*, 1 Stew. (Ala.) 234 ; *Montgomery* v. *Elliott*, 6 Ala. 701.

The second and third grounds of objection are answered by

the decision of this court in *Clark* v. *Iowa City* (20 Wall. 583), where it is said : " Coupons for instalments of interest when severed from bonds are negotiable and pass by delivery. They then cease to be incidents, and become in fact independent claims, and they do not lose their validity if for any cause the bonds are cancelled or paid before maturity, nor their negotiable character, nor their ability to support separate actions." See also *Aurora City* v. *West*, 7 id. 82; *Thompson* v. *Lee County*, 3 id. 327.

It is next alleged for error that the Circuit Court allowed interest on the coupons sued on to be included in the judgment.

The coupons bore interest from the day when they were payable. *Aurora City* v. *West*, *supra ; Clark* v. *Iowa City*, *supra; Town of Genoa* v. *Woodruff*, 92 U. S. 502.

There is nothing in the act authorizing the issue of the bonds to which the coupons belonged that takes them out of these decisions. And we have been referred to no legislation in the State of Illinois which forbids the allowance of interest on this kind of commercial paper.

The failure to present the coupons for payment does not prevent the running of interest. If the town had shown that it had money ready to pay the coupons at the time and place where they were payable, this would have been a defence to the claim for interest. *Wallace* v. *McConnell*, *supra.* But no such proof was offered, nor was it claimed that the fact existed.

Finally, the fact that the corporate authorities of the plaintiff in error issued bonds to the amount of $40,000, when the election held on June 25, 1870, only authorized the issue of $30,000, can have no effect on the rights of the defendant in error to his judgment in this case. The finding of the court is, that his bonds recited on their face that they were issued by authority of the act of March 25, 1869, and in pursuance of the vote taken June 25, 1870.

There was nothing in the act which placed any limit to the amount of stock which the town might subscribe, and the recitals of the bonds gave no notice to the holder that the bonds issued exceeded the amount of stock which the town had voted to subscribe. There was nothing to arouse the suspicions of a

purchaser; nothing to put him on inquiry. As the defendant in error is a *bona fide* holder for value, the fact that the amount of the bonds issued by the corporate authorities exceeded by $10,000 the amount of stock voted for by the inhabitants June 25, 1870, can have no influence upon his right to a recovery upon the bonds which he holds.

We find no error in the record.

*Judgment affirmed.*