### CARRIER *v.* TOWN OF SHAWANGUNK.[*]

*(Circuit Court, S. D. New York.  February 9, 1882.)*

1. MUNICIPAL BONDS — BONA FIDE PURCHASER — CONSTRUCTIVE NOTICE OF INVALIDITY.

    A purchaser before maturity of municipal bonds payable to bearer, is not, *ipso facto*, chargeable with constructive notice of their alleged invalidity because he undertook to satisfy himself by investigation that the condition necessary for their issuance had been fulfilled, and did not rely on their face. Such knowledge, when there are no marks of infirmity on the face of the bonds and no want of power in the municipality, is a question of fact.

2. SAME—SAME—RECITAL OF FULFILMENT OF CONDITIONS.

    Where the officers issuing municipal bonds are invested with power to decide whether the conditions precedent to their issue have been complied with, their recitals to that effect in the bonds, when held by a *bona fide* purchaser, are conclusive.

Motion for new trial.

*Charles C. Leeds* and *Charles H. Winfield,* for plaintiff.

*D. M. De Witt,* for defendant.

[*]Reported by S. Nelson White, Esq., of the New York bar.

SHIPMAN, D. J. This is an action at law to recover the amount due upon sundry bonds for $2,400 issued by the town of Shawangunk, and payable to bearer. The bonds recited that they were issued in pursuance of the act which is hereafter mentioned, and by duly-appointed commissioners.

The second section of chapter 880 of the session laws of 1866 provided that it should be lawful for the commissioners appointed by the county judge, upon the application of twelve freeholders, residents of the town, to borrow on the faith and credit of the town such sum of money as the tax-paying inhabitants of the town should fix upon by their assent in writing, not exceeding a specified percentage of the assessed valuation of the property of the town for the year 1865:

"Provided, however, that the powers and authority conferred by this section shall only be exercised upon the condition that the consent shall first be obtained in writing of such number of the tax-payers of such town, their heirs, or legal representatives, appearing upon the last assessment roll for the year 1865, as shall represent a majority of the taxable property of such town; proof of which shall be by the acknowledgement or proof thereof as required for deeds of real estate filed in the town and county clerks' offices of the respective counties, and annexed to a copy of the assessment roll of the town for 1865. * * *"

For the purpose of showing that the plaintiff, whether a purchaser for value or not, had the title and rights of a *bona fide* holder, because he was the successor of the Dime Savings Bank, which was a purchaser for value before maturity, and without notice of any claim of non-liability on the part of the town, the plaintiff proves, by the attorney of the bank, that before the purchase and before maturity he investigated whether the consent of the town to the issue of the bonds had been obtained as prescribed by the act. Before the examination he had never heard of any claim on the part of the town, or its officers, that the bonds were invalid. He examined a certified copy of the consent and assessment rolls of the town, and ascertained that the majority of the persons upon the assessment list had signed the petition or consent to the bonding of the town, and that the consents represented a majority of the property of the town, and that these facts had been certified to by the proper officers. The witness testified:

"I carefully added up and reviewed the additions already added up, proved the figures, and found them correct. I counted the names for myself, and I read the certificate. It was the county clerk's of Ulster county. * * * I ascertained that all the names on the consent roll were on the assessment roll, and checked them off and added up the amount of the property."

The result of the investigation was reported to the bank, which thereupon bought a large amount of the bonds for 90 per cent. of their par value. The certified copy was delivered to the bank, and was thereafter mislaid and lost.

It was not claimed by the defendant that the bank had any actual notice of any alleged invalidity of the bonds, but the defendant, after the plaintiff had rested, offered a certified copy of the consent roll of the town, in pursuance of which the bonds were authorized to be issued, together with a certified copy of the assessment roll of the town for the year 1865, to show that the consent of the majority in value of the tax-payers was not obtained, and insisted "that the bank must stand or fall by the roll as it in fact was, not by any mistaken interpretation of it by its attorney; that it was not a *bona fide* holder without notice, because it had undertaken to investigate the matter, and did not rely on the face of the security."

The court excluded the evidence, to which ruling the defendant excepted, and a verdict having been subsequently directed for the plaintiff, filed a bill of exceptions and a motion for new trial. The question in regard to the exclusion of the certified copies of the consent and assessment rolls, for the purpose for which they were offered, was the only one which was argued by the defendant.

It will be observed that these rolls were not offered either upon cross-examination of the attorney or as independent evidence to show that he had actual notice of any defect in the number of consents, or that he would have had notice if he had exercised reasonable diligence; but they were offered upon the alleged ground that, inasmuch as the bank's attorney had examined certified copies, it therefore could not be a *bona fide* purchaser, if a comparison of the consent roll with the assessment roll would show that the consent of a majority in value had not been obtained, although diligent scrutiny, at the time of the purchase, did not disclose the alleged fact.

The defendant's proposition was that the purchaser before maturity of municipal bonds, payable to bearer, is not a *bona fide* holder if he undertakes to investigate the validity of the bonds which he proposes to buy, and investigation would have revealed to him a defect, although it was not disclosed by diligent examination, and that such purchaser is charged with notice of all that a complex record might show, although it is not claimed that he had notice of any defect in the bonds, and it is clear that diligent scrutiny of the copies of the public records which were furnished to him did not disclose any suggestion of such defect. No such artificial rule in regard to notice has

been established. It is true that purchasers of municipal bonds are charged with notice of the laws of the state which authorized the issue, and of a want of power in the municipality or its officers to execute or issue the bonds. In this case, it is fairly to be gathered from the statute that the commissioners were invested with power to decide whether the proper number of tax-payers had consented, and whether, therefore, the condition precedent had been complied with, and their recitals in the bonds, when held by a *bona fide* purchaser, are conclusive. *Coloma* v. *Eaves,* 92 U. S. 484; *Humboldt* v. *Long,* 92 U. S. 642; *Walnut* v. *Wade,* 103 U. S. 683. Knowledge, by the purchaser of municipal bonds before maturity, of their invalidity, when there are no marks of infirmity on the face of the instrument, and there is no want of power in the municipality or its officers to execute and issue the bonds, is a question of fact. It being admitted that the purchaser before maturity, for value, had no actual notice or suspicion of any defect, and the bonds in substance reciting compliance with the condition precedent which was required by the statute, the arbitrary rule claimed by the defendant, which declares that he did have constructive notice of a defect, does not exist.

The motion for a new trial is denied, and the stay of proceedings is vacated.