## ASSOCIATED INDEMNITY CORP. et al. v. OIL WELL DRILLING CO.

### No. 14605.

Court of Civil Appeals of Texas. Dallas.
April 17, 1953.

Rehearing Denied May 29, 1953.

Price Daniel, Atty. Gen., Edward Reichelt, Asst. Atty. Gen., and Looney, Clark & Moorhead, and Ned McDaniel, all of Austin, Strasburger, Price, Kelton, Miller & Martin, and Margaret A. Brand, all of Dallas, for appellants.

Burford, Ryburn, Hincks & Ford and Clarence A. Guittard, all of Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from a summary judgment in which the trial court held invalid on constitutional and statutory grounds an order of the Board of Insurance Commissioners promulgated in 1943 authorizing the use in this State of the "retrospective rating plan" in computing premiums due on workmen's compensation insurance.

The litigation began when Associated Indemnity Corporation (hereinafter called Associated) as plaintiff sued Oil Well Drilling Company (hereinafter called Oil Well), defendant, to collect $8,494.00 alleged to be due as a penalty premium on a policy of workmen's compensation insurance. It is undisputed that Associated used the "retrospective plan" in computing the premium. Before answering in the suit, Oil Well instituted proceedings before the Board of Insurance Commissioners (hereinafter called the Board) to set aside the Board's order (not the 1943 order) fixing the amount of premium due under the policy. The Board refused to do so. Oil Well, as plaintiff, then filed a separate suit against the Board and Associated as

defendants, seeking to have the Board's 1943 order declared invalid and seeking to recover from Associated an alleged overpayment in premium. The National Council on Workmen's Compensation (hereinafter called the Council) intervened in the second suit, alleging an interest in the attack on the validity of the retrospective plan. Meantime Oil Well had filed an answer in the first suit, including a cross-action for the alleged overpayment. Thereafter the two suits were consolidated by agreement of the parties. From a judgment for defendant, Associated, the Board, and the Council have appealed.

When the Workmen's Compensation Statute was first passed in 1913 it provided only for "manual" rate making. By this method employers are divided into classifications according to the nature of their business. The *average* prior loss experience of all employers in the same classification is then determined. This average prior loss is used as a basis for establishing rates which are applicable to each $100 of an employer's pay roll.

The "manual" method did not take into consideration the individual loss experience of employers. An individual employer whose loss experience was less than the average within his classification thus was penalized; an employer whose losses were greater than average was favored. To remedy this defect, in 1917 the statute was amended to authorize what came to be known as "experience rating." Under this plan as now modified, a "manual" rate is first determined. In addition, the prior individual loss of each particular employer covering a three-year period is given consideration. If an employer's loss experience is better than the average within his classification, the employer obtains a credit; if his prior experience is worse than the average, he incurs a debit. Thus his final rate may be somewhat less or somewhat more than the "manual" rate. The rate thus arrived at determines the premium to be paid—a premium sometimes called a "Standard Premium."

In recent years recognition has been taken of the fact that the expense incurred in handling risks with large premiums is proportionately less than the expense incurred in handling small risks. Consequently if the "Standard Premium" is sufficiently large it will be reduced in order to give the employer credit for the smaller proportionate expense which is involved in handling a risk of large size. This reduction of the "Standard Premium" is called the "Guaranteed Cost Premium Discount."

The retrospective rating plan, authorized by the Board of Insurance Commissioners in 1943, goes a step further than the plan last mentioned. The significant feature of restrospective rate planning is that it involves consideration of an employer's loss experience during the actual term of his policy, as well as consideration of his experience prior thereto. During his policy term an employer pays the same premiums that he would pay under the "Experience Rating Plan." However at the end of his policy term an examination is made to determine what his actual loss experience was during the term. This added element is taken into consideration in computing his final premium. Within maximum and minimum limits he may then be allowed a debit or credit on his premium, depending on whether his loss was large or small during the term of his policy.

There are three types of Retrospective Rating Plans as authorized by the Board's order—Plan A, Plan B, and Plan C. They differ only as to the maximum and minimum debits and credits allowed. It is Plan B which is involved in this case.

In its answer, Oil Well alleged (1) that it had not contracted for a rating under the retrospective plan; (2) in the alternative, that it had been coerced into so contracting; and (3) that the retrospective rating plan is invalid because it violates both the Constitution and the statutes of this State.

The first two counts in Oil Well's answer have been denied and contested by Associated, so that they must be considered fact issues, but they are issues which the trial court did not attempt to determine in its summary judgment. The ground urged in appellee's motion for sum-

mary judgment, and the only basis upon which the summary judgment could have been rendered, is that the retrospective rating plan as promulgated by the Board is invalid. Obviously the court, having concluded that the retrospective rating plan is invalid, considered the two fact issues as immaterial to a rendition of judgment in favor of appellee. It was upon that basis, and on that basis alone, that the court on March 4, 1952 rendered summary judgment for Oil Well.

We must first consider appellants' contention that we should reverse and remand the judgment of the trial court because it involves a misuse of summary judgment procedure. The reasons advanced are, (1) the case involves fact issues, and (2) it is a case of far-reaching importance.

■ The appeal does not call for us to pass upon any fact issues. The rate-making powers of the Board, the sole issue with which we are concerned here, are legislative in character. The validity of a rate-making order is a question of law. Red Arrow Freight Lines v. American Fidelity & Casualty Co., Tex.Civ.App., 225 S.W.2d 240; Brown & Root v. Traders & General Ins. Co., Tex.Civ.App., 135 S.W.2d 534. Furthermore, in deciding whether the Board's order promulgating retrospective rate planning oversteps its legislative authority, we must construe the statutes empowering the Board to make rates.

We do not think the case of Gulbenkian v. Penn, Tex., 252 S.W.2d 929, cited by appellants, is in point. In that case the Court was asked to pass on a private contract between the parties. One party claimed the other was estopped as a matter of law. The Supreme Court said there were fact issues present involving the credibility of affiants, the weight of showings, and mere grounds of inference. The trial court in order to render summary judgment necessarily had to resolve fact issues. There was no question in the Gulbenkian case of the validity of a legislative order, or the interpretation of a statute, as there is in the case now before us. Whether a law is applicable is a

fact question; whether it is valid is a law question.

In their briefs appellants in substance concede that the trial court did not pass on fact issues in this case. The Council says: "* * * the factual question of whether Oil Well Drilling Company contacted for a retrospective rating indorsement is not now involved in this case. Consequently, such question will not be covered in this brief. * * * However, the trial court in no way based its judgment upon any such coercion. Rather, it went ahead and struck down the retrospective rating plans. * * * in view of the action which the trial court actually took, the issue of the validity of the retrospective rating plans promulgated by the Board of Insurance Commissioners is now involved in this case." Similar statements may be found in the brief of Associated.

Appellants even go so far as to assert that the interpretation of our statutes in this case involves a fact issue. The Board cites us Article 10(1) of our statutes concerning statutory construction, Vernon's Ann.Civ.St., and then in its brief says: While it is true that construction of a statute, * * *, is ordinarily the function of the court, the ultimate question in this case is whether the retrospective rating plan involved in this case is an 'experience rating' plan as that term is understood in the workmen's compensation insurance business. *The question is at least a mixed question of law and fact which can be submitted to a jury if properly framed."* (Emphasis ours.)

■ We disagree with appellants. We think statutory interpretation is a law question analogous to constitutional interpretation as set out in this statement in 6 Ruling Case Law, § 112, pp. 112, 113:

"The constitutionality of a law is not to be determined on a question of fact to be ascertained by the court. * * * Accordingly the validity of an enactment cannot be made to depend on the facts found on the trial of the first case involving the validity of such statute. If the rule were otherwise, the

trial of the main issue would necessarily be delayed until the preliminary fact on which the validity of the contested legislative act depended should be first tried and determined on testimony; and, since this testimony might be different in different cases, there would be involved an absurdity of declaring the law constitutional one day and unconstitutional the next. * * *."

We believe the law on this point was correctly stated by this Court in Hurt v. Cooper, Tex.Civ.App., 113 S.W.2d 929, at page 942:

"Cases may be found where evidence was heard, as in the instant case, and we know of no objection to such procedure, as extrinsic facts may bring immediately to the attention of court the conditions confronting the Legislature when the statute was enacted; *but as courts are authorized to take judicial cognizance of such conditions* [emphasis ours], we do not think error can be predicated upon the refusal of the trial court to admit evidence, where, in the exercise of its discretion, such evidence is deemed unnecessary: 'Whether a seeming Act of a legislature is or is not a law is a judicial question to be determined by the court and not a question of fact to be tried by a jury, even though a determination of the question may involve a finding of fact.' 59 C.J. 621, § 181. 'The right and duty of the judiciary to take jurisdiction and decide cases when constitutional questions are presented, are both imperative and inescapable. * * *.' 12 C.J. 699, § 40. Also see Blessing v. City of Galveston, 42 Tex. 641, 660; Walnut v. Wade, 103 U.S. 683, 26 L.Ed. 526; South Ottawa v. Perkins, 94 U.S. 260, 24 L.Ed. 154." See also McCombs v. Dallas County, Tex.Civ.App., 136 S.W.2d 975.

■ Appellants say further that summary judgment procedure may not properly be used for the determination of questions of such importance as the one involved here. We overrule the contention. In our opinion no good purpose will be served by postponing a decision on the law question before us. On the contrary, the general welfare and especially the stability of business will be better served if the legal status of retrospective rate making is not left in a state of uncertainty. The matter is before us now. Summary judgment procedure has already been used to settle questions of the validity of statutes and of legislative orders. Steuart & Bro. v. Bowles, 322 U.S. 398, 64 S.Ct. 1097, 88 L.Ed. 1350; N. Y. State, etc., Co-op v. Wickard, 2 Cir., 141 F.2d 805, 153 A.L.R. 1165; Midwest Farmers v. United States, D.C., 64 F.Supp. 91.

■ Certainly this law issue cannot be more fully developed, as appellants contend, if we remand the case. Part of the record before us is a purported "Statement of Facts" in two volumes totaling 961 pages. These volumes contain "evidence" in the form of affidavits, depositions, exhibits, and the sworn opinions of experts. May we refer to them as "extrinsic aids" to assist us in interpreting an ambiguous statute? Perhaps so, if we say the statute is ambiguous. 59 Corpus Juris 1012. Even then they are not to be considered as evidence in the sense we use the word as pertaining to fact issues. They may be referred to, if at all, only in connection with our duty to take judicial notice of the matters involved. The Council's points 11 and 12 and the Board's points 11 and 13 are overruled.

We turn, then, to the only question before us: Is the "Retrospective Rating Plan" as promulgated by the Board in 1943 invalid as a matter of law? To shorten this opinion we have tried to boil down the main issues raised in the briefs to the questions and our answers thereto which follow:

■■ I. Is The Plan Invalid Because It Takes Into Consideration Losses Sustained During The Policy Year? Article 5.60 of our Insurance Code, V.A.T.S., authorizes the Board to "adopt a system of * * * experience rating in such manner as to take account of the peculiar hazard of each individual risk * * *. The Board shall exchange information and experience data with the rate-making bodies of other states * * *." It will be seen that there is no express authorization or prohibition of

retrospective rating. Nevertheless appellee says that Art. 5.60 contemplates only *past* loss experience and that it permits only *ordinary* experience rating. We do not accord to the statute such a narrow construction. It authorizes the Board to adopt a *system* of experience rating. The word "system" has been defined as "an organized or methodically arranged set of ideas; a complete exhibition of principles or facts, arranged in a rational dependence or connection." Webster's New International Dictionary (1950). Retrospective rating fits squarely into this definition and complies with the mandate of this statute. We take judicial knowledge of the fact that plan has been approved in at least forty states, with whose rate-making bodies the Board may, by express terms of our statute, "exchange information and experience data.".

■ There are three rules of statutory construction which lend support to our holding. One rule is that courts will be inclined to accept a law administering agency's interpretation of a statute if such interpretation has been accepted without challenge over a long period of time. Texas Employers' Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390, syl. 2. Retrospective rating was first adopted by the Board in 1939. The present plan, promulgated in 1943, took effect January 1, 1944. So far as we know, this is the first time the plan has been challenged in Texas in a judicial proceeding. Another rule is that of two possible constructions of an ambiguous statute, the courts will reject that which would make it ineffective, and will adopt that which will give it effect. Ohio Oil Co. v. Giles, 149 Tex. 532, 235 S.W.2d 630. We think the rule is equally applicable to legislative orders of rate-making Boards. The third rule is that when the legislature, in recodifying our laws, re-enacts a statute without change, it presumably concurs in the interpretation which time and usage have given the statute. Texas Employers' Ins. Ass'n v. Holmes, supra.

However, we believe that the plan complies even with a narrow construction of the statute. The word "retrospective" has been defined as "relating to things past."

Webster's New International Dictionary (1950). The plan takes into consideration, (1) the past average class loss experience; (2) the past three-year individual loss experience; and (3) the experience of the individual during the policy year. But the third step is not taken until the policy year has expired, and the policy year's loss experience has then become a *past* loss experience.

■ By ordinary experience rating, we take it appellee means to include any or all of the forms of experience rating which were in effect prior to 1939 when retrospective rating was first promulgated in our State. Even under a narrow construction, the statute does not put the Board in a straight jacket in its rate-making powers. It cannot be disputed that the legislature originally intended to leave the details of rate making to a rate-making body, such as the Board, to whom such authority was transferred some time ago in a statutory amendment. The Board under the express terms of the statute is directed to use experience rating in a manner to take account of "the peculiar hazard of each individual risk." We take judicial knowledge of the fact that retrospective rating was known in 1917 when our statute was adopted. To check the accuracy of our statement, the general reader may refer to "Proceedings of the Casualty Actuarial Society" (1916), Vol. II., pp. 347, et seq.

■ Moreover, we believe that our law, even our statutory law, is a living thing capable of adjustment within certain limits to meet varying circumstances. Our law is not forever and immutably fixed like the rules of syntax of the ancient dead Latin and Greek languages. An example of what we mean is our exemption statute, Art. 3832, subd. 10, V.A.C.S. When passed in 1870, the statute named a "carriage" as exempt property. The statutory language has remained unchanged to this day. Certainly in 1870 the legislature did not have automobiles in mind when it used the word "carriage." Yet our courts had no difficulty in holding that the word "carriage" must be interpreted to include automobiles. Willis v. Schoelman, Tex.Civ.App., 206 S.W.2d 283. Our views on this subject are

all the more applicable to a statute like the one now under consideration, which admittedly grants discretionary powers to the Board.

We sustain the Council's point No. 1, and the Board's No. 1.

■ II. Is The Plan Fatally Defective On The Ground That It Involves Retroactive As Distinguished From Prospective Rate Making? Article 5.60 provides: "The Board shall determine hazards by classes and fix such rates of premium applicable to the pay roll in each of such classes as shall be adequate to the risks * * *." Appellee says that this language in the statute requires *prospective* rate making and that retrospective rate making violates the requirement. We think that the above quoted part of the statute must be considered together with this language,—also in Art. 5.60: "and for such purpose may adopt a system of * * * experience rating in such manner as to take account of the peculiar hazard of each individual risk". When so taken together, we think the above provisions negative appellee's contention.

■ The retrospective plan is prospective in the sense that it must be selected by the employer at the beginning of the policy year. Thus both the employer and the insurance carrier know in advance what formula is to be applied in computing the premium for the coming year. Neither the pay roll "of each individual employer" nor the last part of his loss experience is yet known. A determination of these facts must await the end of the policy year. Then, and not until then, may the final premium be computed. The formula or rate itself is known at the beginning of the policy year, hence is prospective in nature. All that remains to be done is to apply the predetermined formula to the mathematical data made available at the end of the year.

The standard rate itself necessarily postpones final computation of the premium until the end of the policy year. An employer's pay roll may and probably will change from month to month. He may start his policy year with a small pay roll but end it with a pay roll many times larger. By the year's end he may have stepped from a class of small pay rolls to a class of large pay rolls which are entitled to a credit under the Guaranteed Cost Premium Discount. Is the guaranteed discount plan thereby rendered fatally retroactive? In our opinion it is not. So far as we know, all rate plans of workmen's compensation must postpone their *application* in each individual case until the size of the employer's pay roll can be determined. Thus the *application* of the rate need not be, in fact cannot be, altogether prospective. The rate or formula to be later applied is of course to be determined in advance. The formula is therefore prospective. We believe the retrospective plan meets the requirements of the statute. The Council's point No. 2 is sustained.

■ III. Does The Plan Fail To Fix "Rates Of Premium Applicable To The Pay Roll" Of Each Employer? Appellee contends that the retrospective plan violates statutory authority in that it attempts to determine the amount of an employer's premium without having fixed a definite rate to be applied to his pay roll in computing the premium. Arts. 5.55, 5.56, and 5.60 employ the expression, "rates of premium"; in Art. 5.58 the reference is to "premium rates." A retrospective rating premium is based at the beginning on fixed rates and they are used to the end as part of the formula in computing the final premium. The plan starts out with the fixed rates of the Experience Rating Plan, which in turn had already utilized the fixed rates of the Manual Plan. The final mathematical rate is merely the initial rate as modified by consideration of the loss experience of the policy year. By providing for experience rating "in such manner as to take account of *the peculiar hazard of each individual risk*," the legislature clearly intended a modification of the class rate applicable to the pay roll. We think further that the permissible extent of such modification was intended to be left to the sound discretion of the Board. Such discretion seems to us to have been included in the legislature's provision that the Board *"may adopt a system * * *"*

to take account of the peculiar hazard of each individual risk * * *." (Emphasis ours.) We see no reason why the "peculiar hazard" may not include the experience of the policy year as well as the previous three years. Appellee sued for and obtained a money judgment against Associated for $1757.00 upon an alleged overpayment of premium due. Appellee says its premium should have been computed according to the Guaranteed Cost Discount Plan. It was upon that theory that appellee obtained its judgment, which it asks us to affirm.

Yet the Guaranteed Cost Discount Plan is like the Retrospective Plan in that the initial fixed rate is modified to produce the final figure as to premium due. Under the Guaranteed Cost Discount the premiums which otherwise would be paid under the Experience Rating Plan are subject to a discount, which is dependent upon the total amount of the premium paid *during the policy year.*

We sustain appellants' points No. 3.

IV. Does The Plan Allow An Insurance Carrier To Discriminate Among Insureds Who Are Similarly Situated? Referring to retrospective rating, the Board order provides: "The application of either Plan A or Plan B or Plan C shall be optional with the assured *subject to the acceptance of the Insurance Carrier.*" (Emphasis ours.)

■ Under Texas statutes, as construed in the case of Texas Employers' Ins. Ass'n v. United States Torpedo Co., Tex.Com. App., 26 S.W.2d 1057, workmen's compensation carriers must accept any risk tendered to them. That being true, we think the phrase in the Board's order, "subject to the acceptance of the Insurance Carrier," is invalid.

■ The Board's rate-making powers are legislative in character; hence its orders fixing rates must be subjected to the same tests under the "equal protection" clause as an enactment of the Legislature itself. And applying that test, we believe that the particular phrase in question is discriminatory among insureds. Under the Board's order it lies within the power of the carrier to grant retrospective rating to an employer requesting it, but to arbitrarily deny it to another applicant, though the two may be identically situated. No rule or standard is prescribed to govern the insurance carrier in deciding to whom it will grant the rate, or to whom it will deny the rate. This uncontrolled discretion is discriminatory. Whenever discretionary authority is conferred by law upon any person, agency, or Board to make a decision governing the rights of others, such grant of discretion must be accompanied by definite rules or standards to govern the exercise of such discretionary powers. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; Ex Parte Leslie, 87 Tex.Cr.R. 476, 223 S.W. 227. A legislative order which by its terms accords unequal treatment to persons similarly situated, violates the Equal Protection Clause of the Constitution of the United States. Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375.

■ However, we do not believe that the discretionary nature of the phrase "subject to the acceptance of the Insurance Carrier" destroys the Board's order as a whole. The invalidity of this portion of the order does not affect the validity of the retrospective plan itself. It only affects the method by which a retrospective plan is selected. The invalid portion is separable from the valid. The removal of the invalid phrase will leave the constitutional features and purposes of the Act substantially unaffected.

Our view on this subject is lent support by the following provision of the Act of the Legislature adopting the Insurance Code: "Section 3. * * * If any part * * * phrase, or word contained in this Act shall be held by the Courts to be unconstitutional, such holding shall not affect the validity of the remaining portions of the Act, and the Legislature hereby declares that it would have passed such remaining portions despite such invalidity." Vol. 14, page 712, Vernon's Texas Civil Statutes (Insurance Code). We believe the same principle is applicable to the Board's order.

Such being the case, Oil Well cannot be heard to complain of the invalid phrase. It did not apply for retrospective rating and meet with a refusal from the insurance company. It is not complaining that it was denied retrospective rating. Quite to the contrary, it is complaining because it was given retrospective rating. Not having been injured by the particular provision in question, Oil Well is in no position to attack the provison. Dallas Taxicab Co. v. City of Dallas, Tex.Civ. App., 68 S.W.2d 359; Houston Oil Co. v. Lawson, Tex.Civ.App., 175 S.W.2d 716 (error refused). The Council's points Nos. 6 and 7 are overruled; its point No. 8 is sustained; the Board's points Nos. IV, V, and VI are overruled.

V. Is The Plan An Illegal Arrangement For The Distribution Of Dividends? Appellee in its motion for summary judgment says that the plan is an agreement in advance to share profits, in violation of the statutory requirement, Art. 5.61 of the Insurance Code, that no dividend shall be approved until an adequate reserve has been provided.

In our opinion the retrospective plan is not a dividend distributing scheme. A dividend is payable at the option of the Board of Directors and is payable only out of earned profit. The Plan is quite different. It is a matter of contractual right entered into at the inception of the policy year. By the contract the insured acquires a fixed and irrevocable right which is not dependent on either the discretion of the Board of Directors, or upon the earning of a profit by the carrier. The obligation of the carrier remains the same regardless of whether it makes a profit, or even if it becomes insolvent.

We sustain the Council's point No. 9 and the Board's point VII.

VI. Does The Plan Violate The Uniform Policy Requirement Of Arts. 5.56 And 5.57 Of The Insurance Code? Appellee does not mention this ground in its motion for summary judgment. However it is the basis of appellee's second counterpoint.

We see no merit in appellee's argument. We agree with this statement in the Board's brief: "Uniform policy requirements were never intended to prevent the promulgation of different policy forms to fit different types of coverage or risk assumption." Under the retrospective plan the employer may choose between the retrospective plan and the guaranteed cost discount plan. The two plans set up different classes of coverage. Naturally, different policy forms must be set up to meet the needs of different classes. All that the law requires is that the policies *within each class* shall be uniform. We overrule appellee's argument.

After considering all of the points presented on this appeal, we have concluded that the Board's order of Oct. 22, 1943 promulgating the present retrospective rating plan is valid, excepting the phrase "subject to the acceptance of the Insurance Carrier." Though that provision is invalid, in our opinion it does not invalidate the whole order. Appellee in this case is not in any way affected by such invalid provision; hence may not rely upon it to sustain the summary judgment rendered in appellee's favor.

The judgment of the trial court is reversed and remanded.

Reversed and remanded.