

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 6, 1960

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Dear Mr. Calvert:

Opinion No. WW-949

Re: Constitutionality of
occupation tax as levied
by Art. 19.01 (8), H.B.
11, 3rd C.S., 56th Leg.
(Title 122-A, R.C.S.)

You have requested that we advise you upon the constitutionality of Art. 19.01 (8), H.B. 11, 3rd C.S., 56th Leg. (Title 122-A, R.C.S.), which reads as follows:

> "Nine and Ten Pin Alleys. From every person, firm, association of persons, or corporation, owning or operating for profit every nine or ten pin or other alley, by whatever name called constructed or operated upon the principle of a bowling alley, upon which pins, pegs, balls, rings, hoops, or other devices are used, <u>and where the player thereof does not or is not required to make a coin deposit causing an electrical connection of any nature or kind before such game may be actually commenced</u>, there shall be collected an annual tax of Ten Dollars, ($10) for each track or alley." (Emphasis added.)

We understand that a contention has been made by certain taxpayers that this article is violative of Secs. 1 and 2 of Art. VIII, Constitution of Texas,[1] and that you desire our opinion upon the question so that you can determine a proper assessment of taxes upon this group. Our conclusion is that the questioned provision is not violative of the cited constitutional limitations. For clarity in discussion we here set out a brief review of the events culminating in this request:

The emphasized portion of Art. 19.01 (8) above excludes from the tax machines sometimes referred to as "coin-operated

---

[1] Sec. 1: "Taxation shall be equal and uniform. . . ."

Sec. 2: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax;. . ."

bowling machines."[2]  Prior to February of 1958, an occupation tax was levied upon owners of such machines under the provisions of Arts. 7047a-2 et seq., V.C.S., levying a tax on certain coin-operated machines.  These provisions insofar as here material were carried over substantially intact as Chapter 13 of the new Title 122-A, from which we quote the following definition:

> "The term 'skill or pleasure coin-operated machines' means every coin-operated machine of any kind or character whatsoever, when such machine or machines dispense or are used or are capable of being used or operated for amusement or pleasure or when such machines are operated for the purpose of dispensing or affording skill or pleasure, or for any other purpose other than the dispensing or vending of 'merchandise or music' or 'service' exclusively, as those terms are defined in this Chapter.  The following are expressly included within said term:  marble machines, marble table machines, marble shooting machines, miniature race track machines, miniature football machines, miniature golf machines, miniature bowling machines, and all other coin-operated machines which dispense or afford skill or pleasure."
> (Emphasis added.)

Article 13.02 declares the amount of tax to be levied, from which we quote:

> "(1). . . .
>
> "(b)  A fee of Sixty Dollars ($60) shall be paid on each 'skill or pleasure coin-operated machine' where the coin, fee or token used, or which may be used, in the operation thereof is one of the value in excess of five cents (5¢) or represents a value in excess of five cents (5¢)."

---

[2]
These machines are ordinarily from 10 to 20 feet in length. The player deposits a coin, usually a dime, which activates the mechanism for play.  At the far end of the machine pins are automatically spotted, which the player attempts to knock down with the small balls provided.  Scoring is by means of an electric scoreboard either on or near the machines.

On February 10, 1958, a rather cryptic judgment was entered by the Justice Court, Precinct 1, Place 1, Dallas County, Texas, in Cause No. 59286, in which one Fred Weeks had been charged with displaying a "Shuffle Alley" without a valid license. Apparently the license referred to was that authorized to be issued by the Comptroller's Office to evidence payment of the coin-operated machine tax under the then Arts. 7047a-2 et seq., V.C.S. This judgment held the defendant not guilty of the alleged misdemeanor "for the reason that the devices alleged in the complaints were not in the scope and are not covered by Article 7047a-2 to Article 7047a-18, R.C.S., also known as the Texas Coin Operation (sic.) Machine Tax Law, as the offenses alleged do not come under the specifications of the Law being machines and instruments not covered under this Law." Following this statement, a bit of dictum is indulged in, stating that "If any Tax at all is to be collected it should be for an Occupation Tax and not under the present Texas Coin Operated Machine Tax Law."

Apparently in observance of this judgment and as a result thereof, owners of such machines were, from that time, considered taxable under the provisions of Art. 7047, Section 36, the predecessor of the presently questioned Art. 19.01(8), which subdivision then read as follows:

> "Nine and Ten Pin Alleys. From every person, firm, association of persons, or corporation, owning or operating for profit every nine or ten pin or other alley, by whatever name called, constructed or operated upon the principle of a bowling alley, upon which pins, pegs, balls, rings, hoops or other devices are used, there shall be collected annual tax of Ten Dollars ($10) for each track or alley, provided, however, that said tax shall not exceed One Hundred Dollars ($100) in any such year. Acts 1917, p. 385; Acts 1943, 48th Leg., p. 654, Ch. 372, § 1."

This subdivision was expressly repealed by Sec. 7(b) of the new Title 122-A, being replaced by Art. 19.01 (8). Comparing the two provisions, it will be seen that they are identical, except that (1) the exclusionary language in question was added, and (2) the limiting proviso at the end of the section was removed. Your specific question, reiterated, is whether or not the insertion of this exclusionary clause now

renders the provision obnoxious to Secs. 1 and 2 of Art. VIII, Constitution of Texas, and therefore void.[3]

It has long been the settled rule in this State that the Legislature is vested with wide discretion in the classification of occupations for the purpose of taxation. The landmark cases in this area are Texas Company v. Stephens, 100 Tex. 628, 103 S.W. 481 (1907) and Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937). Sacrificing amplification for the sake of brevity, we will forego extensive quotation from these authorities. It is sufficient to state that this legislative discretion will only be questioned where the classification is clearly arbitrary.

Looking at Art. 19.01 (8) as independent and new legislation, we think it evident that the Legislature was well within its discretionary bounds in classifying nine and ten pin alleys for taxation, and only taxing thereunder that class of devices "where the player thereof does not or is not or is not required to make a coin deposit causing an electrical connection." As said in the Stephens case, supra:

> "The mere fact that discrimination
> is made proves nothing against a classifi-
> cation which is not, on its face, an
> arbitrary, unreasonable or unreal one."

However, we believe that there is a further justification of this provision as it now exists. As stated, until February

---

3
It appears from your request and from subsequent conferences that the taxpayers involved put forth the following proposition: If, as they contend, Art. 19.01(8) is unconstitutional, its companion repealer provision, repealing the original Art. 7047, Section 36, also fails, thereby leaving the original provision in full force and effect. Authorities are cited in support of this theory. In view of our decision, we deem it unnecessary to discuss this contention further than to here set it out. We do point out, however, that their view presupposes automatic re-establishment of the original status quo; that is, that your office will continue to classify the machines in question as falling within the definition of "Nine and ten pin alleys" instead of within the definition of "skill or pleasure coin-operated machines."

of 1958 the class of coin-operated bowling machines described above were considered as and taxed as coin-operated machines. Such action received the implied approval of the Legislature, through acquiescence.  Associated Indemnity Corp. v. Oil Well Drilling Co., 258 S.W.2d 523, aff'd. 153 Tex. 153, 264 S.W.2d 697 (1953); Texas & N.O.R. Co. v. Railroad Commission, 145 Tex. 541, 200 S.W.2d 626 (1946).  However, when an abrupt change was made in that year, and such devices were suddenly considered taxable as "Nine and Ten Pin Alleys," the very next session of the Legislature found it necessary to further clarify their intent in this area.  Since the coin-operated machine tax provision had already long contained language including "miniature bowling machines," the Legislature apparently felt that any further clarification should be made by language specifically excluding the group of devices under consideration from the scope of the nine and ten pin alley tax.  The result was the addition of the questioned clause in Art. 19.01(8), not as an exception provision, but rather as an indication that it did not intend the class "nine and ten pin alleys" to include the devices described.

We have been referred to several cases holding attempted classification for tax purposes unconstitutional under Secs. 1 and 2 of Art. VIII of the Constitution.  We have likewise found many cases upholding questioned classifications.  These are all, in effect, specific applications of the rule expressed by the Stephens and Cooper cases.  Although each would bear in some degree upon the present question, a review of them would unduly lengthen this opinion.  As stated, we believe that Art. 19.01 (8) is a sound exercise of legislative discretion and not obnoxious to the cited constitutional sections.

A supplement to your original request herein has recently been received by us, containing two further questions.  The first such question is as follows:

"1.  Can two or more coin operated machines that are bolted together, boarded together, or connected in any like manner, having separate coin chutes and each machine operating individually, operate under one license or will each machine be required to have a license?"

Chapter 13 of Title 122-A clearly contemplates a tax upon each coin-operated machine within its scope.  The license referred to, of course, signifies payment of the tax (Art. 13.06). To allow evasion of the tax by so frail a subterfuge as bolting or boarding together two or more of these machines would be

a mockery of the plain legislative intent.  You are therefore advised that, under the situation described in your question, each machine will be required to have a license.

Your second supplementary question makes the inquiry

"2.  Does the Attorney General Opinion
No. S-122 and No. V-986 apply to the
revision of the coin machine law now
found in Chapter 13 of 122A-'Taxation-
General'?"

Opinion No. V986 (1950) held that a coin-operated electric scoreboard used to score suffleboard games is not a "service coin-operated machine" and that the "owner" thereof is required to pay the occupation tax under Articles 7047a-2--7047a-18 (now Chp. 13, Title 122-A), V.C.S.  You are advised that this Opinion is still applicable to the present law.

Opinion No. S-122 (1954) held that coin-operated machines which are installed solely as services to customers of various business establishments are "service coin-operated machines," within the definition of that term as used in Arts. 7047a-2 and 7047a-4 (now Arts. 13.01 (6) and 13.03, Title 122A,) V.C.S., and therefore not subject to tax.  Of course, any machine which dispenses service only and not merchandise, music, skill or pleasure is specifically exempted from the coin-operated machine tax (Art. 13.03); however, this would, in every case, be a question of fact.  Even in situations similar to that prompting Opinion No. S-122 there could exist widely varying circumstances, which would determine whether such machines as discussed therein were being furnished solely as services or whether they were for the purpose of dispensing "skill or pleasure."  Therefore, in the absence of a particular fact situation, we are unable to make a categorical statement concerning the applicability of Opinion No. S-122.

S U M M A R Y

Art. 19.01 (8), H.B. 11, 3rd C.S.,
56th Leg. (Title 122A, R.C.S.) is not
violative of the provisions of Art. VIII,
Secs. 1 and 2, Constitution of Texas.
When two or more separate coin-operated
machines, subject to the tax imposed by
Chp. 13, Title 122A, are joined together
by some method, each machine is still

required to have a license evidencing
payment of the tax.  Attorney General's
Opinion No. V-986 is still applicable
to the provisions of Chp. 13, Title 122A;
Attorney General's Opinion No. V-986 may
be applicable to specific situations
arising under this Chapter.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _James R. Irion_
James R. Irion
Assistant Attorney General

JRI:cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Martin DeStefano
Elmer McVey
Iola Wilcox

REVIEWED FOR THE ATTORNEY GENERAL

By:  Leonard Passmore