Hart, J.
 

 The two issues in these cases, substantially stated, are: Whether the relators, who did not consent to the refunding program, should be preferred over the “consenters” in the payment of their bonds; and whether the relator Bruml is entitled to interest upon interest accruing upon his bonds.
 

 The respondents take the position that the order issued by this court in the earlier case contemplated that all of the bondholders of the village of Brooklyn, including the holders of refunding bonds as well as the relators holding original or unrefunded bonds, should be protected in accordance with their respective
 
 *597
 
 proportionate interests without reference to the maturity of the bonds. This is an unwarranted assump-. tion because there were no refunding bonds, but only original bonds, outstanding at the time the court made •its order.
 

 No act of the General Assembly could impair or modify the contract obligations of the village to the relators without their consent, and this court, in the absence of such consent, must accord to them their rights as they stand .under the bonds as issued.
 

 Section 2293-5s, General Code, relied upon by the village of Brooklyn as protecting it from the charge and demands of the relators, is as follows:
 

 “In order to preserve and protect the lien of the nonconsenting bondholders, the funds collected each year on such reassessments shall be pledged first for payment of any amounts due or to become due on interest and principal on bonds of the original issue, whether matured or immatured, the holders of which have not consented, until the amount so collected equals the amount which would have been collected under the •original assessment, and applicable to such bonds not refunded and in consenting to any such refunding of bonds,, the consenting bondholders shall be conclusively presumed to have consented to such preference. No refunding shall be accomplished or re-assessment made ■on such a basis that the amount certified for annual ■collection upon any re-assessment shall be less than the principal and interest requirements of the bonds held by nonconsenting bondholders. General taxes levied annually under the requirements of Section II, Article XII of the Constitution shall be apportioned between the bonds not refunded and those refunded in proportion to the interest and maturity requirements of bonds outstanding prior to such refunding until bonds of the original issue not refunded have been paid. * * * ”
 

 Perhaps it should be noted in passing that we are .here dealing with the general bonds of the village of
 
 *598
 
 Brooklyn which are a direct indebtedness of the village, and not with mortgage improvement bonds which would be a lien only on some improvement or utility owned by the village.
 

 This section of the statute attempts to preserve the rights of nonconsenting original bondholders as against consenting refunding bondholders, the proceeds of whose bonds have taken up and paid off a portion of the original issue of bonds of the same class as the bonds of the nonconsenting bondholders, by appropriating thereto taxes and assessments as paid. Under the Uniform Bond Act when the original bonds were issued, levies or assessments were required to be made to meet the interest on such bonds and the principal at maturity, and Section
 
 2293-5p
 
 of the act as amended (118 Ohio Laws, 62), shows that it was the intention to preserve through the act itself the vested rights of bondholders who did not consent to the debt readjustment plan as provided for therein. This section of the act, among other things, provides:
 

 “The annual interest and retirement levies required to pay the interest on the original issue of bonds and the principal thereof at maturity shall be reduced in each year by the amount of such levies which would have been required to pay the interest and principal of such bonds as may be surrendered for cancellation and refunded hereunder.”
 

 From the provisions of the statute just quoted, it clearly appears that the annual interest and retirement levies required to pay the interest and the principal on such original bonds as were not surrendered and cancelled under the refunding plan, should not be reduced under the plan but should continue for the retirement of such bonds. The nonconsenting bondholders cannot complain as to the distribution of assessments paid in to retire such bonds as is contemplated by the statute so long as the bonds of the nonconsenting bondholders have not matured, but this arrangement cannot defeat the right of such bondholders to
 
 *599
 
 demand immediate payment of their bonds when they mature.
 

 The bonds of the relators, unlike the refunding-bonds, are now in default and no legal reason can excuse their immediate payment. While bondholders holding assessment bonds are entitled to have assessments paid applied on the liquidation on their bonds, and may prevent such paid assessments from being-diverted to other purposes, yet when such bonds mature they become the absolute debt of the governmental subdivision issuing- them and are then payable whether sufficient assessments have been paid in or not.
 

 ■ The village of Brooklyn, instead of paying off these defaulted bonds from funds in its sinking fund, chose to go into the market and purchase to its own advantage and to the advantage of the remaining consenting bondholders holding refunding bonds, certain of such refunding bonds held by consenting bondholders, at less than par. In pursuing- such course, it violated the order of this court as to payment of relators’ bonds.
 

 The claim of the relator Bruml for interest on accrued interest on his bonds must be allowed. Under a contract for the payment of interest at a specified rate annually, whereon there is a default of payment of such interest when due, interest on interest will be computed at the regular rate.
 
 Cook
 
 v.
 
 Courtright,
 
 40 Ohio St., 248, 48 Am. Rep., 681;
 
 Cramer
 
 v.
 
 Logger,
 
 26 Ohio St., 59, 20 Am. Rep., 756;
 
 Anketel
 
 v.
 
 Converse,
 
 17 Ohio St., 11, 91 Am. Dec., 115. And the courts of this state have adopted the general view that a municipality is liable for interest on its obligations the same as a natural person.
 
 City of Cincinnati
 
 v.
 
 Whetstone,
 
 47 Ohio St., 196, 24 N. E., 409;
 
 Warren Bros. Co.
 
 v.
 
 City of Cincinnati,
 
 92 Ohio St., 514, 112 N. E., 1087;
 
 City of Toledo
 
 v.
 
 Scott,
 
 O. S. U., 123, 23 W. L. B., 238.
 

 By the weight of authority outside of Ohio, in the absence of statute, the same rule applies to overdue interest on bonds issued by a government or governmental subdivisions.
 
 Bd. of Commrs. of Ouray Coun
 
 
 *600
 

 ty
 
 v.
 
 Geer,
 
 108 F., 478;
 
 Gelpcke
 
 v.
 
 City of Dubuque,
 
 68 U. S. (1 Wall.), 175, 17 L. Ed., 520;
 
 Aurora City
 
 v.
 
 West,
 
 74 U. S. (7 Wall.), 82, 19 L. Ed., 42;
 
 Cromwell
 
 v.
 
 Sac County,
 
 96 U. S., 51, 24 L. Ed., 681;
 
 Walnut
 
 v.
 
 Wade,
 
 103 U. S., 683, 26 L. Ed., 526;
 
 Koshkonong
 
 v.
 
 Burton,
 
 104 U. S., 668, 26 L. Ed., 886;
 
 Pana
 
 v.
 
 Bowler,
 
 107 U. S., 529, 27 L. Ed., 424, 2 S. Ct., 704;
 
 Scotland County
 
 v.
 
 Hill,
 
 132 U. S., 107, 33 L. Ed., 261, 10 S. Ct., 26;
 
 Cairo
 
 v.
 
 Zane,
 
 149 U. S., 122, 37 L. Ed., 673, 13 S. Ct., 803;
 
 Edwards
 
 v.
 
 Bates County,
 
 163 U. S., 269, 41 L. Ed., 155, 16 S. Ct., 967;
 
 Hughes County
 
 v.
 
 Livingston,
 
 104 F., 306, writ of
 
 certiorari
 
 denied,
 
 County of Hughes
 
 v.
 
 Livingston,
 
 181 U. S., 623, 45 L. Ed., 1033, 21 S. Ct., 926;
 
 Caldwell
 
 v.
 
 Dunklin,
 
 65 Ala., 461;
 
 Bd. of Commrs. of Lake County
 
 v.
 
 Linn,
 
 29 Col., 446, 68 P., 839;
 
 City of Cripple Creek
 
 v.
 
 Adams,
 
 36 Col., 320, 85 P., 184;
 
 Jefferson County
 
 v.
 
 Hawkins, Trustee,
 
 23 Fla., 223, 2 So., 362;
 
 City of San Antonio
 
 v.
 
 Lane,
 
 32 Tex., 405;
 
 Mills
 
 v.
 
 Town of Jefferson,
 
 20 Wis., 50.
 

 While this court finds that the village of Brooklyn-in failing to carry out the order of this court is in'contempt, yet, because some uncertainty existed in the interpretation of the order of the court and the legal rights of the relators, which the village officials have been attempting to determine, the village and its officers should be granted a period of time witliin which they may purge themselves of such contempt by taking steps to comply with the order; and a period of 90 days is fixed by this court for that purpose.
 

 Motion sustained in cause No. 23941.
 

 Writ allowed in cause No. 29423.
 

 Weygandt, C. J.; Matthias, Zimmerman, Bell and Turner, JJ., concur. ' .
 

 Williams, J.,' not participating.