[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
OPINION.
All parties have appealed the judgment of the trial court granting a directed verdict for the plaintiff-appellant on the first count of his complaint; judgment notwithstanding the verdict for the defendants-appellees on the second count of the complaint; and a directed verdict for the defendants-appellees on the third count of the complaint. Plaintiff-appellant also appeals the trial court's denial of his motion for pre-judgment interest and attorney fees, and the defendants-appellees challenge the jurisdiction of the trial court over the subject matter of the complaint.
Plaintiff-appellant/cross-appellee Alan Safdi, M.D., is a Cincinnati physician. Defendant-appellee/cross-appellant John Gallegos works in the construction industry in Colorado, and defendant-appellee/cross-appellant Donald McLean works in real estate sales in Colorado. Gallegos, McLean and Tim Meyer formed a partnership in 1991 to build and sell condominiums in the Telluride, Colorado, area. To secure a construction loan, Meyer contacted Dr. Safdi, through Dr. Safdi's attorney, Jack Donenfeld. Donenfeld and Safdi and their families frequently vacationed in Telluride.
Dr. Safdi and Meyer negotiated the terms of Dr. Safdi's investment in the partnership venture, and, in October 1991, Donenfeld reduced the agreement to writing at the request of Dr. Safdi and Meyer. The agreement required Dr. Safdi to pay the expenses of construction as they were incurred, up to $150,000. Dr. Safdi also agreed to personally guarantee the $400,000 construction loan for which the partnership had applied.
In return, the partnership and each of its members in their individual capacities executed a promissory note for $150,000 in Dr. Safdi's favor, payable six months from the date of the agreement (October 1, 1991). If the note were not repaid on time, Dr. Safdi was entitled to receive $150,000 plus fifteen percent interest.[1]
Dr. Safdi was also entitled to fees depending on the number of condominium units sold. He was to receive $40,000 upon the closing of the construction loan, $20,000 upon the closing of the sale of the sixteenth unit of the condominium, $20,000 upon the closing of the sale of the twenty-first unit, and another $10,000 upon the closing of the twenty-third unit. Dr. Safdi was in fact paid the initial $40,000, plus an additional $30,000. He received no further fee payments, even though there was a closing on the twenty-third unit.
Dr. Safdi's personal guarantee of the construction loan extended eight months from the date of the agreement. The partnership was to obtain his release in that period. If he were not released as a guarantor within eight months, the agreement provided for the payment of "liquidated damages" to Dr. Sadfi in the amount of $200,000, as well as reimbursement for any money the bank had actually required Dr. Sadfi to pay.
Gallegos, McLean and Meyer all signed the agreement requiring payment of the fees, interest and liquidated damages both in their capacities as partners in the venture and in their individual capacities. In early 1992, Gallegos and McLean sold their interests in the partnership to Meyer and another investor. As part of that transaction, Gallegos and McLean retained the right to seek indemnification from Meyer for any amounts ultimately payable to Dr. Safdi, but they remained personally liable for such amounts.
The venture was a financial failure. Dr. Safdi was not repaid $150,000 by April 1, 1992; he was not released as a guarantor of the construction loan within eight months of the agreement; and he did not receive all of the fees he was supposed to be paid upon the closing of the sale of the twenty-third condominium unit. Meyer paid Dr. Safdi $150,000 in December 1992, and Dr. Safdi received, at most, $70,000 of the $90,000 in fees set forth in the agreement. Moreover, the partnership became insolvent, as did Meyer. Meyer filed for bankruptcy protection.
Dr. Safdi then contacted Gallegos and McLean, who, although not involved in the partnership venture any longer, remained personally liable for payment of the sums in the agreement. After fruitless conversations with Gallegos and McLean about payment, Dr. Safdi filed suit for breach of contract. At trial, Dr. Safdi requested an award of (a) $22,500, representing 15% interest on $150,000; (b) $20,000 in unpaid fees; and (c) $200,000 in liquidated damages for the failure to remove him as a guarantor of the construction loan. He requested prejudgment interest and attorney fees as well.
At the close of his case-in-chief, the trial court granted a directed verdict in Dr. Safdi's favor on the first two counts of his complaint, and granted a directed verdict in Gallegos's and McLean's favor on the third count of the complaint, holding that the $200,000 was an unlawful penalty and not liquidated damages. The case proceeded to the jury for determination of Gallegos's and McLean's affirmative defenses: accord and satisfaction and laches. The jury returned a verdict in favor of Dr. Safdi on the affirmative defenses.
After trial, Gallegos and McLean moved for judgment notwithstanding the verdict on count two of Dr. Safdi's complaint, on the ground that he had not produced evidence at trial to establish that the closing on the sale of the twenty-third unit had occurred, and therefore had not proven that all conditions precedent to his receipt of the fees were met. The trial court granted the motion. Also, Dr. Safdi moved for but was denied an award of attorney fees and interest on the judgment.
 DR. SAFDI'S APPEAL
In his first two assignments of error, Dr. Safdi challenges the trial court's denial of his motion for summary judgment on the second count of his complaint. He also appeals the court's reversal of its directed verdict in his favor on count two and its subsequent entry of judgment notwithstanding the verdict on that count after the trial.
The standards for ruling on a motion for summary judgment and a motion for a directed verdict mirror one another. See Doyle v.Fairfield Mach. Co. (1997), 120 Ohio App.3d 192, 697 N.E.2d 667. The evidence is construed most strongly in favor of the party against whom the motion is directed, and the motion must be overruled unless, after construing the evidence, reasonable minds could find only in the movant's favor. See Osborne v. Lyles
(1992), 63 Ohio St.3d 326, 327, 587 N.E.2d 825, 827; Nickell v.Gonzalez (1985), 17 Ohio St.3d 136, 477 N.E.2d 1145, 1147;Cardinal v. Family Foot Care Centers, Inc. (1987), 40 Ohio App.3d 181,183, 532 N.E.2d 162, 164. Appellate review is de novo. SeeKoos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588, 641 N.E.2d 265, 271.
To enter a judgment notwithstanding the verdict, the trial court must review the evidence presented at trial and the facts established by the pleadings and the record, construing the evidence most strongly in favor of the party opposing the motion. If reasonable minds may reach different conclusions based on the evidence, the motion must be denied. Gladon v. Greater ClevelandRegional Transit Authority (1996), 75 Ohio St.3d 312, 318,662 N.E.2d 287, 294. See Posin v. ABC Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275, 344 N.E.2d 334, 338.
We agree with Dr. Safdi that reasonable minds could come to but one conclusion on count two of his complaint in this case, and that conclusion is adverse to Gallegos and McLean. The essential facts are undisputed. Gallegos and McLean, in their individual capacities, agreed to pay Dr. Safdi certain fees in return for his agreement to advance money to the partnership. The payment of the fees was dependent upon the date of the closing of the sale of certain of the condominiums. In Gallegos's and McLean's motion for summary judgment and in their response to Dr. Safdi's motion for summary judgment, documentary evidence established that all twenty-four of the condominium units were sold. Thus, Dr. Safdi was entitled to all of the fees included in the agreement.
Dr. Safdi testified in his deposition and at trial that he received the initial $40,000 payment, and that he received another $30,000 in 1993. His testimony was consistent with documents produced by Gallegos and McLean regarding payments to Dr. Safdi, and neither defendant had any evidence to demonstrate that Dr. Safdi received more funds than those to which he testified.
In the documents filed in support of their own motion for summary judgment, as well as in their memorandum in opposition to Dr. Safdi's motion for summary judgment, Gallegos and McLean provided documents demonstrating that all twenty-four units of the condominium were sold. Additionally, in opening statement at trial, counsel for Gallegos and McLean plainly admitted that all of the units were sold and that Dr. Safdi was entitled to receive his fees no later than July 1993. An admission made during opening statement is binding on the party making it. See Hake v.George Weidemann Brewing Co. (1970), 23 Ohio St.2d 65, 68,262 N.E.2d 703, 706.
The argument that the statements were not admissions but were simply made "in passing" is not well taken. Gallegos and McLean acknowledged the sale of all of the condominium units and Dr. Safdi's entitlement to the fees upon the sale of the units, and all of the documentation included in their pleadings demonstrated that these facts were not disputed. Therefore, we hold that the trial court should have granted summary judgment in favor of Dr. Safdi on his second claim for fees. The court properly granted a directed verdict in Dr. Safdi's favor at trial, and it erred in granting judgment notwithstanding the verdict to Gallegos and McLean upon their post-trial representation that Dr. Safdi had failed to prove that the conditions precedent to his receipt of the fees were satisfied.
In Dr. Safdi's third assignment of error, he claims that the trial court erred in denying his request for interest on the amount due for the late payment of the $150,000 promissory note. The agreement required payment of $150,000 no later than six months after the date of the agreement, October 1, 1991. If the $150,000 were not paid in full by that date, Dr. Safdi was entitled to receive 15% annual interest on the $150,000 until the principal amount was paid. The note was not paid until December 1992, entitling Dr. Safdi to 15% interest on the money, or $22,500. The court awarded this amount to Dr. Safdi.
However, Dr. Safdi requested that he also be given prejudgment interest on $22,500 pursuant to R.C. 1343.03(A). R.C.1343.03(A) states in relevant part:
 [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, except that, if a written contract provides a different rate of interest in relation to the money that becomes due and payable, the creditor is entitled to interest at the rate provided in that contract.
Dr. Safdi claims that he is entitled to interest on the $22,500 that became due in December 1992 when the principal amount of the promissory note was paid. The court declined to award interest, stating only that Dr. Safdi was not entitled to prejudgment interest.
Generally, compound interest is not permitted absent a specific agreement or statutory provision permitting the compounding of interest. See Viock v. Stowe-Woodward Co. (1989),59 Ohio App.3d 3, 569 N.E.2d 1070. In State ex rel. Bruml v.Brooklyn (1943), 141 Ohio St. 593, 599, 49 N.E.2d 684, 687, the Supreme Court of Ohio held that when a bond specifically provided for the payment of interest at a specified rate, and there was a default in the payment of the interest, interest on the defaulted interest was permissible. The payment of interest on accrued unpaid interest is not limited to bonds but is applicable generally to any contract providing for the payment of interest. See id.
The contract between the parties here stated that "[i]f any installment of principal or interest or other payment due * * * is not paid when due, the amount therefore shall bear interest which shall be deemed to have accrued from the date hereof until paid[,] at a rate (`Default Rate') equal to fifteen (15%) percent per annum." (Emphasis added.) Interest on the unpaid $150,000 accrued until the debt was paid in December 1992. At that time, a definable interest amount, $22,500, became due. The terms of the contract between the parties specifically provided for the payment of interest on any unpaid installment of interest. Thus, pursuant to the express contract between the parties and the operation of R.C. 1343.03(A), Dr. Safdi is entitled to fifteen percent interest on the $22,500 from the time the debt accrued until it is paid.
We hold that Dr. Safdi's third assignment of error has merit, and we reverse the trial court's denial of Dr. Safdi's request for prejudgment interest at the rate of fifteen percent per annum.
In his fourth assignment of error, Dr. Safdi claims that the trial court erred in failing to award him attorney fees. However, the attorney-fee provision that Dr. Safdi requested the court to enforce was contained in the terms of the promissory note signed by Gallegos and McLean. Courts in Ohio continue to follow the well-established principle of law that a provision in a promissory note for payment of attorney fees upon a default is contrary to public policy and void. See Miller v. Kyle (1911), 85 Ohio St. 186,97 N.E. 372, paragraph one of the syllabus; Vannoy v. CapitalLincoln-Mercury Sales, Inc. (1993), 88 Ohio App.3d 138, 142,623 N.E.2d 177, 180.
Although the Supreme Court of Ohio and other Ohio courts have approved the allocation of attorney fees in other types of contracts, Miller has never been overruled and remains the law in Ohio. See Nottingdale Homeowners' Assn. v. Darby (1987), 33 Ohio St.3d 32,35, 514 N.E.2d 702, 705 (limiting the application ofMiller to cases involving "a commercial transaction and a promissory note containing an attorney fee stipulation"); Hilb,Rogal Hamilton Agency of Dayton, Inc. v. Reynolds (1992)81 Ohio App.3d 330, 335, 610 N.E.2d 1102, 1106 ("The reasoning behind the holding in Miller evidences the intent to nullify provisions for attorney fees found in debt instruments"); Wyoming CondominiumUnit Assn. v. Solomon (April 1, 1987), Hamilton App. Nos. C-860245 and C-8403405, unreported ("Provisions in promissory notes for attorney fees incurred in enforcing payment are void as against public policy").
The provision for the payment of attorney fees in the promissory note is void, and we hold that the trial court did not err in overruling Dr. Safdi's motion for an award of attorney fees.
We also hold that the court committed no error in determining that the provision in the contract requiring the payment of $200,000 to Dr. Safdi if he were not released as a guarantor on the loan within eight months of the signing of the agreement was an unenforceable penalty provision, rather than a valid liquidated-damages clause. The trial court properly granted a directed verdict against Dr. Sadfi on this issue.
A liquidated-damages clause is not considered a penalty when (a) the amount of damages from a violation of the contract would be uncertain and difficult of proof; (b) the "contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties"; and (c) the contract demonstrates that the parties intended that damages in the amount stated should follow a breach of the contract. SeeSamson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27,465 N.E.2d 392, syllabus.
The parties' agreement included a provision that if Dr. Safdi were required to repay any amount of the loan to the bank as a result of his guarantee, he would be reimbursed for all amounts paid, at an interest rate of 15%, plus an alleged "liquidated-damages" payment of $200,000. This amount was the same for all of the other alleged liquidated-damages clauses in the agreement: it was 50% of the amount of money/guarantee provided by Dr. Safdi.
In cases such as this, where the amount required to be paid is arbitrarily chosen, bears no relation to any actual damages that the contracting party might rationally incur, is included by the drafter of the document for the drafter's benefit, and is triggered by the failure of a party to act within a certain period of time, courts have consistently held such provisions to be unenforceable as penalties. See, e.g., Midamco v. Fashion Bug ofSolon, Inc. (1996), 116 Ohio App.3d 854, 857-858, 689 N.E.2d 605,607-608, and cases cited therein. As the court succinctly stated in Hunter v. BPS Guard Servs. (1995), 100 Ohio App.3d 532, 551,654 N.E.2d 405, 417, "reasonable compensation for actual damages is the legitimate objective of the liquidated damages provisions and, where the amount specified is plainly unrealistic and inequitable, courts will ordinarily regard the amount as a penalty."
Therefore, we hold that the trial court did not err in directing a verdict against Dr. Sadfi on this issue.
 GALLEGOS'S AND McLEAN'S APPEAL
Gallegos and McLean have also appealed the judgment of the trial court, raising three assignments of error. In their first assignment of error, they claim that the trial court gave an erroneous jury instruction on their affirmative defense of laches. They contend that, with a proper instruction, the jury could have determined that Dr. Safdi's delay in bringing suit against them prejudiced them to such an extent that Dr. Safdi should have been denied recovery on his claims.
However, after reviewing the evidence presented on the issue of laches, we hold that the erroneous jury instruction was harmless, as the issue of laches should never have gone to the jury. To prevent recovery on a claim based on laches, the party asserting the defense must show (a) an unreasonable delay or lapse of time in asserting a right; (b) absence of an excuse for the delay; (c) knowledge of the wrong or injury (knowledge of the cause of action); and (d) prejudice to the party asserting the defense. See State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections
(1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277, 1279.
The prejudice to the party asserting the defense must be material. Generally, the types of prejudice that will support the application of laches are (a) the loss of evidence helpful to the defendant's case, or (b) a change in the defendant's position that would not have occurred had the plaintiff not delayed in asserting his rights. The delay must have affected the defendant's ability to defend the suit. See Ohio State Bd. Of Pharmacy v. Frantz
(1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 633; State ex rel.Chavis v. Sycamore City School Dist. Bd. of Edn. (1994), 71 Ohio St.3d 26,35, 641 N.E.2d 188, 196; State ex rel. Roadway Expressv. Industrial Comm. (1998), 82 Ohio St.3d 510, 514,696 N.E.2d 1064, 1067.
In this case, Gallegos and McLean essentially assert that they were prejudiced by Dr. Safdi's delay in bringing his lawsuit because their former partnership had failed and their former partner, Meyer, had filed for bankruptcy protection. Gallegos and McLean had an agreement with Meyer that he would indemnify them for any losses incurred in the business venture. However, neither presented any evidence as to how either had changed their positions during the delay between the time that Dr. Safdi's cause of action accrued and the date he filed suit.
They also failed to present any evidence that they were prejudiced in their preparation for the trial by the delay. Although they claimed that their access to the partnership's documents was impaired, this resulted merely from the passing of time, which was an insufficient basis for imposition of the laches doctrine. See Wise v. Wise (1993), 86 Ohio App.3d 702, 705,621 N.E.2d 1213, 1215, citing Connin v. Bailey (1984), 15 Ohio St.3d 34,35-36, 472 N.E.2d 328, 329 ("Delay itself does not give rise to the defense of laches"). Thus, the doctrine of laches was inapplicable as a matter of law in this case, and the trial court's erroneous instruction was, consequently, harmless error.
In their second assignment of error, Gallegos and McLean claim that the trial court erred in denying their motion for a new trial on Dr. Safdi's claim for unpaid interest on the $150,000 promissory note. We hold that the trial court did not err in directing a verdict in Dr. Safdi's favor on this claim or in denying the motion for a new trial. The parties did not dispute that (a) Gallegos and McLean signed a promissory note for $150,000, due April 1, 1992; (b) if the note were not paid in full on the due date, Dr. Safdi was entitled to 15% interest on the note; (c) the note was not repaid on April 1, 1992; and (d) no money was paid to Dr. Safdi until December 1992, at which time Meyer executed three checks totaling $150,000.
Based on this evidence, reasonable minds could only conclude that Dr. Safdi was entitled to recover interest on the unpaid promissory note. Gallegos and McLean argue that Dr. Safdi was not entitled to all the stated interest on the $150,000, because one of the checks contained the notation "12% interest on $145K for 8 months."
This notation did not provide evidence from which reasonable minds could conclude that the payment was for interest on the note. First, the interest rate agreed upon was not 12% but 15%. Next, the amount of the promissory note was $150,000, not $145,000. At the time the three checks were given to Dr. Safdi, he was still owed fees under the contract, and, he thought, the $200,000 penalty. There was no indication on the checks that the money was supposed to be for the note, the fees, or the penalty, all of which were subject to a 15% interest rate. Finally, nothing in any of the written agreements between the parties gave Gallegos and McLean the right to designate whether their payments were going to principal or interest on the loan.
Gallegos and McLean next claim that they were not required to pay the full $150,000 reflected in the promissory note because it was undisputed that Dr. Safdi did not disburse that amount. However, they signed a promissory note in which they promised to pay Dr. Safdi $150,000 on April 1, 1992; in return for this payment, all Dr. Safdi was required to do was to pay certain bills or expenses when they came due. Gallegos and McLean do not dispute that Dr. Safdi performed his part of the contract.
The promissory note was not for "repayment," as Gallegos and McLean characterize it. It was a promise to pay $150,000 in return for certain action by Dr. Safdi, not a promise to reimburse him for funds expended. That Dr. Safdi did not pay out the full limit of his potential liability for expenses did not release Gallegos and McLean from paying the entire $150,000. Dr. Safdi fully performed as required in the agreement, and he was entitled to enforce the promissory note for the full amount of $150,000.
The third assignment of error addresses the jurisdiction of the trial court. Gallegos and McLean claim that the forum-selection clause in the agreement designating Ohio as the proper forum for litigation of disputes arising out of the agreement was void because it was the product of overreaching and was unreasonable and unjust. The argument that enforcement would be unreasonable or unjust is without merit, considering that Gallegos and McLean have already fully litigated the case in Ohio without any unreasonable or unjust consequences to them.
Gallegos and McLean produced no evidence at trial or at any other time to demonstrate that the forum-selection clause was the product of overreaching. Since the agreements were freely negotiated for the benefit of all parties, we decline to hold that, as a matter of law, the forum-selection clause was void simply because the property development that was the subject of the agreement occurred in Colorado, and not Ohio. Therefore, we reject the third assignment of error.
 CONCLUSION
Based on the foregoing, we hold that Dr. Safdi's first, second and third assignments of error have merit, and we sustain them. We further hold that Dr. Safdi's fourth and fifth assignments of error are not well taken, and we overrule those assignments of error.
We also reject all of the assignments of error advanced by Gallegos and McLean.
Accordingly, we reverse the judgment entered against Dr. Sadfi on count two of his complaint and the denial of his request for prejudgment interest, and we remand this case for the entry of appropriate orders in his favor consistent with this opinion. In all other respects, the trial court's judgment is affirmed.
Judgment affirmed in part, reversed in part, and causeremanded.
 Sundermann and Winkler, JJ., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.
[1] The agreement also included a provision entitled "liquidated damages," which purported to require an additional payment of 50% of the loan amount to Dr. Safdi if the loan were not repaid on time. Dr. Safdi abandoned his claim for those damages at the opening of the trial.