OPINION
Plaintiffs-appellants Shirley and Ronald Ickes appeal the July 10, 2001, Judgment Entry of the Stark County Court of Common Pleas which confirmed an arbitration award and awarded prejudgment interest in favor of plaintiffs-appellants. Defendants-appellees are Kemper National Insurance, dba Lumberman's Mutual Casualty Company, and CNA Insurance Group, dba Transcontinental Insurance Company.
 STATEMENT OF THE FACTS AND CASE
On February 20, 1997, Shirley Ickes was injured in a two-car crash that occurred in Jackson Township, Stark County, Ohio. The tortfeasor, Onie M. Hillyard [hereinafter tortfeasor], failed to yield the right-of-way and crashed into the vehicle in which Shirley Ickes was a passenger. As a result of her injuries, Mrs. Ickes required numerous surgeries and is expected to undergo additional future surgeries.
Shirley Ickes and her husband, Ronald Ickes, presented claims to the tortfeasor's insurer. The tortfeasor carried minimum liability limits of $12,500.00 per person with Progressive Insurance Company. The Ickeses and Progressive Insurance Company entered into a settlement on December 31, 1999, for $12,500.00.
The Ickeses had underinsured motorist coverage [hereinafter UIM] on their personal vehicles with Allstate Insurance. Appellants presented claims for UIM coverage to Allstate Insurance. The Ickeses and Allstate Insurance entered into a settlement on January 3, 2000, for the maximum benefit available, $12,500.00.
On February 20, 1997, the date of the accident, Shirley Ickes was an employee of Warner-Lambert, nka Pfizer. Ronald Ickes was employed by Republic Storage Systems, Inc. Pursuant to Scott-Pontzer v. LibertyMutual Fire Insurance Co. (1999), 85 Ohio St.3d 660, and Ezawa v. YasudaFire and Marine Insurance Co. (1999), 86 Ohio St.3d 557, UIM claims were made with the carriers insuring Warner-Lambert and Republic Storage Systems, Inc.
Warner-Lambert/Pfizer was insured by Kemper National Insurance Companies, dba Lumberman's Mutual Casualty Company [hereinafter Kemper]. This policy had a UIM limit of One Million Dollars. Republic Storage Systems, Inc. was insured by CNA Insurance Group, dba Transcontinental Insurance Company [hereinafter CNA]. This policy provided UIM coverage in the amount of One Million Dollars.
On February 2, 2001, the UIM claims of Shirley and Ronald Ickes were submitted to binding arbitration pursuant to Kemper and CNA's insurance policy language. The arbitration panel unanimously agreed that the total damages for Shirley and Ronald Ickes were $1,450,000.00. The arbitration panel issued an arbitration award on February 13, 2001.
On February 21, 2001, Shirley and Ronald Ickes filed their Application to Confirm the Arbitration Award and Reduce to Judgment [hereinafter Application]. In addition, the Ickeses filed a Motion for Prejudgment Interest [hereinafter Motion]. The trial court held a hearing to consider the Ickes' Application and Motion on March 23, 2001.
On July 6, 2001, the trial court issued a Judgment Entry. The July 6, 2001, Judgment Entry contained errors, causing the trial court to enter aNunc Pro Tunc Entry on July 10, 2001. In the July 10, 2001, Judgment Entry, the trial court granted the Ickes' Application and Motion, thereby confirming the arbitration award and awarding prejudgment interest, commencing January 3, 2000.[1]
On July 13, 2001, the Ickeses filed a Motion for Reconsideration and Clarification. The Ickeses asked the trial court to reconsider the start date for prejudgment interests. The Ickeses argued that the start date for prejudgment interest should have been the date the Ickeses settled with the tortfeasor's liability carrier for the liability limit of $12,500.00 (May 15, 1997). The Ickeses also argued that post-judgment interest should have been awarded.
On August 17, 2001, the trial court entered a second Nunc Pro Tunc
Entry. The trial court stated that "it was the intention of the court to use the date of settlement of the tortfeasor's claims (December 29, 2000) as the date for the commencement of pre-judgment interest."
On August 8, 2001, the Ickeses timely filed a Notice of Appeal to the July 10, 2001, entry. On August 22, 2001, CNA Insurance filed a motion to extend the time in which CNA was required to file a notice of cross appeal and a Notice of Cross Appeal from the July 10, 2001, Judgment Entry of the trial court. The Notice of Cross Appeal was designated as Stark App. No. 2001CA00286.[2]
The following issues were raised on appeal by Shirley and Ronald Ickes.
 THE TRIAL COURT ERRED IN RULING THAT THE PRE-JUDGMENT INTEREST COMMENCEMENT DATE SHOULD BE DECEMBER 29, 2000. IN SELECTING THE DATE OF DECEMBER 29, 2000 AS THE PREJUDGMENT START DATE, THE TRIAL COURT ACTED UNREASONABLY AND/OR ARBITRARILY.
 THE TRIAL COURT ERRED IN NOT ORDERING POST-JUDGMENT INTEREST ON THE FINAL JUDGMENT ENTERED, WHICH FINAL JUDGMENT SHOULD INCLUDE THE PREJUDGMENT INTEREST OWED.
 I
In the first assignment of error, appellants contend that the trial court acted arbitrarily and/or unreasonably when it selected December 29, 2000 as the prejudgment interest start date. It should be noted here that the appellants filed their Notice of Appeal to the July 10, 2001, Judgment Entry. The July 10, 2001, Judgment Entry actually set the date of January 3, 2000, not December 29, 2000, as the date for prejudgment interest. December 29, 2000, is the date the prejudgment interest is to begin under the August 17, 2001, Nunc Pro Tunc entry. Appellants may have assumed that the August 17, 2001, entry corrected a clerical error in the July 10, 2001, entry and that this correction was effective retroactively to the July 10, 2001, entry. As we will discuss later in this opinion, we disagree with this assumption. However, we do not find this assumption or mistake to be fatal to appellants' first assignment of error. The appellants have argued in the discussion of their first assignment of error that May 15, 1997, is the correct date to begin prejudgment interest. Therefore, we will address the merits of appellants' first assignment of error.
The trial court awarded prejudgment interest pursuant to Landis v.Grange Mutual Insurance Company (1998), 82 Ohio St.3d 339, and R.C.1343.03(A).[3] However, this court is faced with three judgment entries issued by the trial court, each providing a different starting date for the prejudgment interest. The first thing this Court must do is identify the judgment entry to be reviewed in this appeal. As noted previously, the trial court issued a Judgment Entry on July 6, 2001. In the July 6, 2001, Judgment Entry, the trial court chose a prejudgment start date of January 3, 2001. On July 10, 2001, the trial court issued a Nunc ProTunc order, changing the start date for prejudgment interest from January 3, 2001, to January 3, 2000. January 3, 2000, was the date that the Ickeses settled with Allstate Insurance, their own personal UIM carrier. However, on August 17, 2001, the trial court entered a second nunc protunc entry. In the August Entry, the trial court stated that "[t]he Court is entering this Judgment Entry Nunc Pro Tunc to correct an error in its previous Judgment Entry filed July 10, 2001, wherein it confused the tortfeasor's policy with the underinsured policy. It was the intention of the court to use the date of settlement with the tortfeasor's claims (December 29, 2000) as the date for the commencement of prejudgment interest."
Pursuant to the following analysis, we find that this Court's review is limited to the July 10, 2001, Judgment Entry. The July 10, 2001, Judgment Entry sought to correct a clerical error in the July 6, 2001, Judgment Entry regarding a date. "January 3, 2001" was changed to "January 3, 2000." January 3, 2000, was the date the Ickeses and their UIM insurer entered into a settlement. The date of January 3, 2001, did not correspond to any event relevant to these proceedings. This was a valid,nunc pro tunc judgment entry.
However, the August 17, 2001, Judgment Entry was not a valid nunc protunc judgment entry. The August 17, 2001, Entry was entered by the trial court after the Ickes filed their notice of appeal on August 8, 2001, and was entered without leave of this court. A trial court can correct a clerical error at any time but leave of the appellate court is necessary if an appeal has been docketed. Civ.R. 60(A).[4] Further, only clerical errors may be corrected. The function of nunc pro tunc is not to change, modify, or correct erroneous judgments but merely to have the record speak the truth. Ruby Wolf (1931), 39 Ohio App. 144
 Dentsply International, Inc. v. Kostas (1985), 26 Ohio App.3d 116. "A court may not by way of a nunc pro tunc entry, enter of record that which it intended or might have made but which in fact was not made." Peperav. Pepera, (March 26, 1987), Cuyahoga Nos. 51989, 52024, unreported, 1987 WL 8586 (citing Webb v. Western Reserve Bond and Share Company, (1926),115 Ohio St. 247.) The August Judgment Entry sought to correct more than a clerical error. It sought to make a substantive correction. Therefore, it is void and this court must review the July 10, 2001 Judgment Entry as the final order of the trial court.
Upon review, we find that the July 10, 2001, Judgment Entry should be modified as a matter of law as to the date upon which prejudgment interest began to accrue. In part, the trial court's July 10, 2001, Judgment Entry (pages 7-8) states:
 [T]he Court finds that it is the totality of the circumstances and the applicable contract language that must be used in determining when to accrue prejudgment interest.
. . .
The policies in the instant case clearly provide that payment of underinsured motorists benefits is contingent upon the exhaustion of all other applicable policies of insurance or the tentative settlement of the claims with the tortfeasors [sic] applicable insurer. Thus, the Court finds that the plaintiffs uninsured motorists benefits did not become due and payable until these contingencies were met. The evidence before this Court is that the tortfeasors [sic] policy limits were paid to the plaintiffs on December 29, 2000 [sic] and the Plaintiffs uninsured motorists policy benefits were paid on January 3, 2001 [sic]. . . .
Based upon the totality of the facts and circumstances in the instant case, and the applicable policy language, the date for accruing prejudgment interest shall be January 3, 2000, the date that the contingencies for uninsured motorists coverage under the Kemper and CNA policies of insurance were met. . . . The contracts in question make the payment of such benefits contingent upon exhaustion of the torfeasor's policy and other applicable policies and/or settlement with approval of claims thereunder.
The trial court clearly intended to start prejudgment interest accruing on the date that the contingencies had been met for the payment of underinsured motorist benefits under the Kemper and CNA policies. But, based on the trial court's misinterpretation of the Kemper and CNA policies' contingency language, the trial court designated the incorrect date of January 3, 2000, to begin the accrual of prejudgment interest.
First, we must determine whether the trial court abused its discretion in deciding to begin the accrual of prejudgment interest on the date the contingencies had been met for the payment of underinsured motorist benefits under the Kemper and CNA policies. In other words, did the trial court abuse its discretion in deciding to use the Kemper and CNA insurance contract language to determine when underinsured motorist benefits became due and payable and to start prejudgment interest accruing from that date? Based on the following analysis, we find the trial court did not abuse its discretion.
A claim for uninsured/underinsured motorist benefits is a contract claim, not a tort claim. Thus the insured can recover prejudgment interest under R.C. 1343.03(A), the statute governing interest on contracts, book accounts, and judgments. Landis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339. In Landis, the majority opinion cites the following portion of R.C. 1343.03(A):
 "When money becomes due and payable upon any . . . instrument of writing . . . and upon all judgments . . . for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum."
Interestingly, the Ohio Supreme Court in Landis did not say that prejudgment interest must begin to accrue on the date the insurance contract says the UM/UIM benefits are due and payable. In Landis, the Ohio Supreme Court remanded the matter back to the trial court to determine "[w]hether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis. . .". It appears from this language that the Ohio Supreme Court left it up to the discretion of the trial court to determine the starting date for prejudgment interest. Under the abuse of discretion standard, the trial court's discretion is not absolute, but it is very broad. Appellate courts must review the trial court's finding to determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemorev. Blakemore (1985), 5 Ohio St.3d 217, 219.
The trial court issued a nine page decision on this issue. It indicated it considered the totality of the facts and circumstances. On pages five, six and seven of its opinion it listed the circumstances it found relevant to its decision including:
 The policies were issued to the employers of the plaintiffs.
The date of the accident, February 20, 1997, predates the Ohio Supreme Court decision in Scott Pontzer v. Liberty Mutual Insurance Company
(1999), 85 Ohio St.3d 660.
The CNA and Kemper policies contain identical language in the uninsured motorist portion of the policies.
The actual language of the policies in the uninsured motorists portions.
Both CNA and Kemper acknowledged coverage subsequent to payments by the tortfeasor's policy of insurance and the uninsured motorists policy held by Allstate. Payments on those policies were made on December 31, 1999, and January 3, 2000, respectively.
The underinsured motorists claims were submitted to arbitration on February 2, 2001.
The trial court also discussed the Fifth District Court of Appeals case of Nichols v. Milwaukee Insurance Company (Aug. 21, 2000), Stark App. No. 2000CA00066, unreported, 2000 WL 1275389 and Norton v. AllstateInsurance Co., (March 26, 2001), Stark App. No. 2000CA00348, unreported, 2000 WL 300631.
The trial court concludes by finding that "utilization of the accident date . . . would be inequitable in that the law with regard to commercial policies of insurance and underinsured motorists coverage was unsettled at this time. Further, the record . . . is unclear as to when an actual demand for coverage was made to CNA and Kemper. Finally, the Court's analysis is heavily influenced . . . by the contract language itself, as there has been no "breach" or denial of coverage. The contracts . . . make the payment of such benefits contingent upon exhaustion of the tortfeasor's policy and other applicable policies and/or settlement with approval of claims thereunder. The logic of the Supreme Court of Ohio that prejudgment interest should be awarded in uninsured motorists claims under R.C. 1343.03(A) is only served if the Court treats these actions as it would an award of prejudgment interest in other contract cases. In other words, it is the contract language which should determine when sums are due and payable, and the award of prejudgment interest is compensation to the plaintiff for that period of time between accrual of the claim and judgment. See e.g. Royal Electric Construction Corporation v. Ohio StateUniversity (1995), 73 Ohio St.3d 110, 116."
We conclude that the trial court did not abuse its discretion when, after it considered the totality of the facts and circumstances of the case and the applicable policy language, it found that prejudgment interest began to accrue on the date underinsured benefits were due and payable under the language of the Kemper and CNA insurance contracts.
We do, however, find that the trial court mistakenly interpreted the meaning of the language of the insurance contracts. The CNA policy of insurance and the Kemper policy of insurance contain identical language in the uninsured motorist portion of the policies and both provide as follows:
 Coverage; We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" caused by an "accident". * * *
We will pay under this coverage only if a. or b. below applies:
 The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or;
 A tentative settlement has been made between an "insured" and the insurer of the vehicle described in paragraph b. of the definition of "uninsured motor vehicle" and we
 Have been given prompt written notice of such settlement; and
 Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
* * *;
 "Uninsured motor vehicle" means a land motor vehicle or trailer:
* * *;
Which is an underinsured motor vehicle. An "underinsured motor vehicle" means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an "accident" provides at least the amount required by the applicable law where a covered auto is principally garaged but their limits are less than the Limit of Insurance of this coverage. * * *
The trial court, in its Judgment Entry of July 10, 2001, interpreted that contract language to mean that payment of the uninsured benefits were not due and payable until the exhaustion of the tortfeasor's policy and the exhaustion of other applicable policies, including appellants' own uninsured motorist policy. The tortfeasor's insurance company paid on December 31, 1999, and the appellants' company paid on January 3, 2000. We find that interpretation to be incorrect as a matter of law. We find that the correct interpretation is that the uninsured benefits were due and payable under the Kemper and CNA policies when the tortfeasor's policy was exhausted by payment. We do not find that the appellants' own uninsured motorist policy is a liability policy.
Generally, liability coverage is distinguished from uninsured motorist coverage [hereinafter UM] or UIM coverage. See Schumacher v. Kreiner
(2000), 88 Ohio St.3d 358; R.C. 3937.18.[5] Liability insurance is "insurance that covers [claims] against the insured for damages . . . to other drivers or passengers. . . . [The purpose of the insurance is to cover] damages for which the driver [tortfeasor] can be held liable." Black's Law Dictionary. In contrast, the purpose of UM and UIM coverage is to "protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." Moore v.State Auto Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 31. In other words, the purpose of the coverage is "to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." Abate v. PioneerMut. Cas. Co. (1970), 22 Ohio St.2d 161, 165.
In accord with the purpose of UM and UIM coverage, exhaustion of liability policies has been defined in terms of the tortfeasor's insurance. For example, in Fulmer v. Insura Property and Casualty Ins.Company (2002), 94 Ohio St.3d 85, a UIM policy stated that it would pay coverage when "[t]he limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments or settlements . . ." Id. at 394 (emphasis added). The court held that the exhaustion requirement was met when the insured reached a settlement with the tortfeasors' insurer. Id. at syllabus.
In accord, Bogan v. Progressive Casualty Insurance (1988),36 Ohio St.3d 22, syllabus at 2, modified and explained by McDonald v.Republic-Franklin Insurance Company (1989), 45 Ohio St.3d 27.
Based on the preceding analysis we find that the uninsured benefits were due and payable from the Kemper and CNA insurance policies as of December 31, 1999, when the appellants signed a release in favor of the tortfeasor and the tortfeasor's liability insurer in exchange for $12,500.00, the limits of tortfeasor's policy.
Appellants argue in their brief that prejudgment interest should be ordered from May 15, 1997, the date that the tortfeasor's insurance company offered its limits of $12,500.00 in exchange for a release. Appellants argue that the trial court abused its discretion in not selecting the date of May 15, 1997, since that is the date the claim was settled and not December 31, 1999, when the settlement actually was completed with payment and the signing of the release. In addition, appellants argue that the reason that the settlement was not completed until December 31, 1999, was because Warner-Lambert (Shirley Ickes' employer) intentionally withheld from the appellants the information that Kemper was its insurer. Based on the fact that Warner-Lambert is not a party to this action and on the fact that the Scott-Pontzer, supra. decision was not issued until 1999, we still find no abuse of discretion in the choice of dates by the trial court.
In conclusion, we sustain in part, appellants' first assignment of error. The trial court did not abuse its discretion in deciding to begin the accrual of prejudgment interest on the date that uninsured motorist benefits were due and payable under the Kemper and CNA insurance policies. The trial court did, however, misinterpret the insurance contract language and chose an incorrect date to begin prejudgment interest. The date should be December 31, 1999.
 II
In the second assignment of error, appellants contend that the trial court erred when it failed to order post-judgment interest upon the final judgment and that the final judgment should have included the amount of prejudgment interest owed. We agree.
In this case, the trial court made the following, relevant Order:
 [J]udgment is hereby rendered in favor of Shirley and Ronald Ickes and against Defendant CNA Insurance and Defendant Kemper National Insurance Companies, jointly and severally, in the amount of One Million Four Hundred Twenty-Five Thousand and 00/100 Dollars ($1,425,000), plus prejudgment interest at the rate of ten percent (10%) per annum commencing January 3, 2000, through the time of the payment of the award.
This court addressed this issue previously in Singer v. Celina Group
(May 30, 1995), Stark App. No. 94CA0333, unreported, 1995 WL 495427. InSinger, the appellees/cross-appellants claimed that the trial court erred in denying their motion for post-judgment interest and that once the trial court determined that prejudgment interest was appropriate, they were entitled to have the amount of prejudgment interest reduced to judgment and have post-judgment interest assessed against that judgment. In accord, Nakoff v. Fairview General Hospital (1997), 118 Ohio App.3d 786,787. We agreed, noting that "[w]hen interest is in fact part of the debt owed, awarding interest upon the interest that is a part of the debt is not compound interest." Id. (relying upon Anketel v. Converse (1866),17 Ohio St. 11.
State ex rel. Bruml v. Village of Brooklyn (1943), 141 Ohio St. 593.
Thirty-Four Corporation v. Hussey (May 7, 1985), Franklin App. No. 84 AP-337, unreported, 1985 WL 10275). We held that "[t]o approach this matter differently would thwart the true purpose and spirit of the prejudgment interest statute. It would permit the continued litigation of a claim while affording the debtor protection from running interest on the original debt. Further, the amount of prejudgment interest is an ascertainable amount available to the trial court and easily reduced to judgment." Id.
While the trial court did not use the phrase "post-judgment interest," the trial court did order prejudgment interest to continue to accrue until payment of the award was made. Thus, the interest ordered continued past judgment and, as with post-judgment interest, continued until payment was made. However, in any case, we find that the trial court erred when it failed to reduce the prejudgment interest to judgment and then order post-judgment interest until payment of the total award, i.e. the award of $1,425,000 plus prejudgment interest, was made.
Thus, appellants' second assignment of error is sustained.
The judgment of the Stark County Court of Common Pleas is affirmed, in part, and reversed in part, and is remanded back to the trial court for issuance of a judgment entry consistent with this opinion.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed, in part, and reversed, in part, and the matter is remanded to the trial court for issuance of a judgment entry consistent with this opinion. Costs to appellee.
[1] January 3, 2000, was the date the Ickeses signed a release in favor of Allstate Insurance Company, their personal UIM carrier.
[2] Case number 2001CA00286 will be decided by separate opinion.
[3] In Landis v. Grange Mutual Insurance Company (1998),82 Ohio St.3d 339, the Ohio Supreme Court determined that an underinsured motorist claim was a contract claim which was entitled to prejudgment interest at 10% per annum under R.C. 1343.03(A). Revised Code 1343.03(A) states the following in pertinent part: "when money becomes due and payable upon any . . . instrument of writing . . . and upon all judgments, decrees, and orders . . . for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum. . . ."
[4] Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court. Civ.R. 60(A).
[5] "Any policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages." R.C.3937.18(A), in part.